# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2190

_____

United States of America,                  *
                                            *
            Appellant,                      *
                                            *    Appeal from the United States
      v.                                    *    District Court for the
                                            *    Northern District of Iowa.
Jeffrey Dale Ketzeback, also known          *
as Jeffrey Dale Ketzback, also known        *
as Jeffery Dale Ketzeback,                  *
                                            *
            Appellee.                       *

_____

Submitted:  December 16, 2003

Filed:  March 1, 2004

_____

Before WOLLMAN, JOHN R. GIBSON, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The government appeals from the district court's order granting the defendant's motion to suppress evidence. We reverse and remand.

Based on information provided by a confidential informant (CI),[1] Dickinson County, Iowa, Sheriff's Deputy Don Gude applied for and received a warrant to search Jeffrey Ketzeback's apartment. The search uncovered marijuana, methamphetamine, and drug paraphernalia. After Ketzeback was indicted by a federal grand jury, he mounted challenges to Gude's warrant affidavit, contending that it was deliberately and materially misleading because Gude had checked boxes on the warrant form specifying that the CI had "no criminal record" and "no motive to falsify information," notwithstanding Gude's knowledge that the CI had admitted to previous drug use and had furnished the information about Ketzeback shortly after being arrested on multiple charges of misdemeanor theft. Following a hearing, a magistrate judge recommended that the evidence seized during the search of the apartment be suppressed. The district court agreed, concluding that the omitted information was so damaging to the CI's credibility that the affidavit could not have supported a probable cause finding if the omitted facts had been disclosed.

## I.

On February 25, 2002, Gude arrested the CI on nine counts of misdemeanor theft for the alleged unauthorized use of the CI's roommate's ATM card. During the ride to the sheriff's office, the CI volunteered that he had information about drug trafficking in Spirit Lake, Iowa. He stated that his brother had been purchasing drugs from a "Jeff," who lived below the CI in Apartment #0 of the Lakes Apartments. He stated that Jeff lived with a "Jane"; that two days prior to his arrest, the CI witnessed Jeff selling methamphetamine to two unidentified persons. The CI admitted that he too had purchased drugs from Jeff in the past, but claimed that he had been drug-free for a month or two. He described the color of the methamphetamine and how it was

---

[1]The CI's identity is known to the parties and was mentioned in prior proceedings, but we will use a generic label because his identity was not disclosed to the issuing judge.

packaged, drew a rough diagram of the interior of Apartment #0, and gave deputies a phone number for Jeff that was written on a piece of paper contained in the CI's wallet. Finally, the CI knew that Jeff was on probation for a drug conviction in Minnesota and that police had recently stopped Jeff in the Spirit Lake cemetery and may have towed his car.

Gude's subsequent investigation revealed that the telephone number provided by the CI was registered to the Lakes Apartments address under the name "Mike" Ketzeback and that a Lakes Apartments tenant list identified the occupants of Apartment #0 as Ketzeback and Jane Caviness. Gude contacted the Spirit Lake Police Department and confirmed that Ketzeback had been stopped in the Spirit Lake cemetery two months earlier, cited for no operator's license, and given a ride back to the Lakes Apartments after his car was towed. Finally, a criminal history check on Ketzeback showed, inter alia, a Minnesota felony conviction for the sale of toxic substances and a five-year sentence of probation. Gude then confirmed that supervision of Ketzeback's probation had been transferred from Minnesota to Iowa.

After a criminal history check on the CI returned no record,[2] Gude applied for a search warrant. His affidavit in support of the application recounted some of the preceding information but omitted mention of the CI's drug use, his alleged prior purchases from Ketzeback, and his arrest on nine pending charges of misdemeanor theft (the last bit of information was apparently omitted pursuant to Gude's office's "practice" of mentioning only convictions and dismissals). The affidavit also omitted the CI's mention of his brother, the CI's knowledge that Jeff lived with a "Jane," the CI's diagram of the interior of the apartment, and the CI's knowledge that Jeff was on probation for a drug conviction in Minnesota.

_____

[2]It was later discovered that the CI did have one prior conviction, but there is no evidence Gude knew of it, and the district court did not find that Gude's checking of the "no criminal record" box was a deliberate or reckless falsehood.

## II.

A facially valid warrant affidavit is constitutionally infirm if the defendant establishes that the affidavit includes deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. Franks v. Delaware, 438 U.S. 154, 171 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002). We review the district court's underlying factual findings on these points for clear error and its legal determinations de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996); Allen, 297 F.3d at 794.

The district court did not err in finding that Gude had intentionally omitted information from his affidavit.[3] This finding by itself is not sufficient to vitiate the warrant, however, for every factual omission is intentional insofar as the omission is made knowingly. United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). The inquiry must proceed, then, to the further question whether the officer omitted the facts with the intent to mislead or in reckless disregard of the omissions' misleading effect. United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986). Although the district court made no factual findings regarding this second step of the Franks/Reivich inquiry, it implicitly resolved the matter against the government, see United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986), so we will assume, arguendo, that the district court properly inferred Gude's reckless disregard of the

---

[3]The district court found that Gude's omissions were intentional because he followed office practice when omitting the information. Although it is not our function to draft a manual on search warrant procedures, we agree with the district court that the practice of omitting relevant information from affidavits is one that is fraught with peril.

-4-

misleading effect of the omitted information. See United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993) (inferring reckless disregard based on the "highly relevant" nature of the omitted information); Reivich, 793 F.2d at 961 (noting inference permissible when omission would have been "clearly critical" to issuing judge). That assumption brings us to the final step in the Franks inquiry: whether Gude's affidavit would not have been sufficient to support a finding of probable cause if the omitted facts had been included. See Allen, 297 F.3d at 795; Jacobs, 986 F.2d at 1235; Reivich, 793 F.2d at 961.

Probable cause exists when the warrant affidavit sets forth facts which would lead a prudent person to believe that there is a fair probability contraband will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983); Reivich, 793 F.2d at 959. When the affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination, Gates, 462 U.S. at 230, and may occasionally be critical. United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998). Evidence of the informant's credibility is not, however, an independent requirement "to be rigidly exacted in every case . . . ." Gates, 462 U.S. at 230. The existence of probable cause is instead a fluid, nontechnical judgment made after a "'practical, commonsense' evaluation of the 'totality of the circumstances.'" Reivich, 793 F.2d at 959 (quoting Gates, 462 U.S. at 238).

Applying that standard here, we conclude that an affidavit supplemented by the omitted information would support a finding of probable cause. First, the supplemented affidavit would show that the CI, after his arrest on theft charges, admitted to drug involvement and provided deputies with the first name, address, and telephone number of a person from whom the CI had previously purchased drugs. In doing so, the CI implicated himself in drug activity while in custody on entirely unrelated and relatively minor charges. See United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (noting that informant's statements were presumptively credible

because he admitted criminal activity beyond that for which he had been arrested); Reivich, 793 F.2d at 959 (same). We recognize that pending charges might motivate an informant to lie, but that inference is more appropriately drawn where the informant is attempting to shift blame to another for the same or a related offense, which is not the case here. Moreover, we have repeatedly rejected any blanket conclusion that an informant's drug use, pending charges, or cooperation is so suspect that it necessarily vitiates probable cause. See, e.g., Allen, 297 F.3d at 795-96; Tyler, 238 F.3d at 1038-39; United Sates v. Gladney, 48 F.3d 309, 315 (8th Cir. 1995); United States v. Wold, 979 F.2d 632, 634-35 (8th Cir. 1995); United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990) (per curiam). Gude testified that he had made no promises of leniency to the CI, and even assuming that the CI desired to curry favor with the authorities, it is difficult to understand how lying would have advanced that cause. See Reivich, 793 F.2d at 960.

Second, the supplemented affidavit would show that the CI had recently witnessed the alleged dealer's sales, that he was able to give a description of the drugs and their packaging, and that he knew that Ketzeback had recently encountered police in a cemetery. These are detailed allegations that go beyond a "casual rumor circulating in the underworld," Spinelli v. United States, 393 U.S. 410, 416 (1969). Moreover, the deputies corroborated the alleged dealer's name, address, and the details of the cemetery encounter. Cf. Tyler, 238 F.3d at 1039; United States v. Buchanan, 167 F.3d 1207, 1211 (8th Cir. 1999) (concluding that omissions, although problematic, did not destroy probable cause partly because the information was validated through independent corroboration of innocent details). It is true, as the district court observed, that this corroborated information was publicly available and established primarily that the CI knew Ketzeback. Nevertheless, independent corroboration of even innocuous facts makes it more likely an informant is telling the truth about incriminating ones, and corroboration of innocent behavior can provide the basis for establishing probable cause. See Spinelli, 393 U.S. at 427 (White, J., concurring); Allen, 297 F.3d at 794. In our view, the corroboration here

simultaneously established both that the CI knew Ketzeback and his activities and that the CI was providing accurate information about that knowledge. See Reivich, 793 F.2d at 959 ("[A]n informant's clear basis of knowledge [may] be balanced against, rather than overruled by, that informant's lack of a 'track record' of reliability.").

Finally, the affidavit showed that Ketzeback was currently on probation on a felony conviction for selling toxic substances. We believe that confidence in the CI's allegations was legitimately bolstered by the independent information that Ketzeback had a prior conviction for selling drugs and was on probation for that offense. The Supreme Court has noted that "the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." United States v. Knights, 534 U.S. 112, 120 (2001) (citation omitted). This observation is particularly salient here, where the CI's allegations of illicit conduct were similar to the conduct for which Ketzeback received probation.[4] Accordingly, we conclude that as supplemented with the omitted information, the affidavit would justify a belief by a prudent person that the CI was reliable, that Ketzeback was up to his old ways, and that, by a fair probability, contraband would be found in his apartment. See Allen, 297 F.3d at 793 (finding probable cause where informant "described Allen's house, told them the address, what cars were parked there, who owned the black van parked at the house, and that Allen was a felon . . ." and police "verified some of the information, including the address and the owner of the black van.").

---

[4]Citing Knights, the government suggests in a footnote in its brief that it needed only reasonable suspicion to search Ketzeback's apartment. This might have been the case had it been established that the terms of Ketzeback's probation included his consent to a warrantless search of his residence. Because we do not know the precise terms of Ketzeback's probation, however, we express no opinion on the government's passing remark.

The order suppressing the evidence is reversed, and the case is remanded to the district court for further proceedings.

_____