# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

───────────

No. 09-1362

───────────

United States of America,

        Appellee,

    v.

Rodney Sherman,

        Appellant.

Appeal from the United States
District Court for the
Eastern District of Missouri

[UNPUBLISHED]

───────────

Submitted: December 17, 2009
Filed: April 14, 2010

───────────

Before LOKEN, Chief Judge,[1] BENTON, Circuit Judge, and VIKEN,[2] District Judge.

───────────

VIKEN, District Judge.

Rodney Sherman entered conditional guilty pleas to one count of making a false declaration on his 2003 personal income tax return and one count of making a false declaration on his 2004 corporate income tax return in violation of 26 U.S.C.§

───────────

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, sitting by designation.

7206(1).  His pleas reserved the right to appeal the decision of the district court[3] denying a motion to suppress a search warrant of his business premises and the refusal of the district court to allow expert witness testimony to calculate the appropriate advisory guideline range for sentencing purposes.  We affirm.

## I. Background

On September 15, 2005, an Associate Circuit Court Judge of St. Charles County, Missouri, issued a search warrant for Budget Towing, which was owned by Sherman and located in Wentzville, Missouri.  The search warrant was supported by two affidavits, which were sworn to before the judge who issued the search warrant. The first affidavit was executed by Officer Buehrle of the O'Fallon Police Department and the second by Lesley Schellert, a former employee of Budget Towing.

The affidavits contained the following information.  Schellert, who was an office employee, believed that her employer, Sherman, was defrauding insurance companies by his billing practices under a contract Budget Towing held with the City of O'Fallon.  While vehicles without insurance coverage were billed $15, Budget Towing was charging the insurance carriers for insured vehicles an increased fee of between $140 and $160 for the same services.  Schellert told Officer Buehrle that Budget Towing charged an additional fee of $35 for clean up following an accident, even if the tow-truck operator did no clean up.  When Schellert confronted Sherman about these billing practices, she was fired.

---

[3]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

Schellert also described in her affidavit a procedure by which Budget Towing would sell towed vehicles to a salvage yard for $50 without the proper title work having been completed. These were cash sales in which the tow driver would receive $5 for towing the sold vehicle to the salvage company and the remaining cash would belong to Budget Towing. She also described how the other office employee, a Ms. Walters, who was still employed, would burn or shred all cash receipts so the money could not be tracked to Sherman and his business.

Schellert related that Sherman maintained two separate safes, one in his office and one in the back area, where all cash was secured. At the end of the day, Sherman would separate the cash from check receipts, putting the checks into a bank bag for deposit. Cash receipts were given to Walters for shredding and the cash would go into Sherman's pocket or a separate money bag, which he would take home. Finally, Schellert stated that Sherman had access to all of the computers on the business premises and he was able to change the data on them.

Schellert's affidavit disclosed she had allowed Officer Buehrle to tape record a detailed interview at her home and she would cooperate and testify, if necessary. She acknowledged she feared criminal charges would be possible against her for participation in these activities and that she had been fired for confronting Sherman about the fraudulent charges to the insurance companies.

Officer Buehrle's affidavit described his nineteen years of police experience and the details of his interview with Schellert. His affidavit described a handwritten document produced by Schellert which indicated Budget Towing had been paid for a number of vehicles sold to the salvage yard without titles between April 2002 to June 2004.

Officer Buehrle also reviewed three separate billings of Budget Towing which included the $35 clean-up fee. When interviewing two of the drivers from one of

those accidents, both stated that no clean up was performed by the tow driver. In a separate collision, another driver reported it was the fire department which had removed vehicle parts from the highway, not Budget Towing.

The search warrant, in relevant part, allowed for the seizure of the following items:

1. All documents, receipts, invoices, insurance billings, vehicle titles, salvage titles and other articles regarding tow bills . . . to private individuals, insurance companies . . . . All documentation regarding the sale or transfer of motor vehicles with or without titles that had been towed by Budget Towing . . . .

2. Any and all electronic data processing and storage devices, computer and computer systems including central processing unit, internal peripheral storage devices such as fixed disks, external hard disks, floppy disks and diskettes, tape drives and tapes, optical storage devices, or other memory storage devices, peripheral input/output devices related communication devices such as modem; system documentation, operating logs, handwritten notes in the computer area that could be a password, instruction booklet or other operational manuals for the computer system, and documentation to show any computer assigned or used by Budget Towing and it's [sic] employees, and to take photographs of the area surrounding the computer.

The search warrant was executed on September 16, 2005, by Officer Buehrle, officers from the O'Fallon Police Department, and federal agents with the U.S. Postal Inspector's Office. Sherman was ultimately charged with seven counts, alleging violations of 26 U.S.C. § 7206 for making false declarations on both his personal and corporate federal tax returns for the years 2002 through 2004.

Sherman filed a detailed affidavit in support of his request for a <u>Franks</u>[4] hearing and his motion to suppress the evidence seized under the search warrant. A <u>Franks</u> hearing was held before a United States Magistrate Judge. Sherman alleged the affidavits intentionally and recklessly misled the state judge by including affirmative false statements or by omitting material information which would have affected the probable cause determination.

Sherman's testimony for the <u>Franks</u> hearing challenged Schellert's dates of employment and her position with Budget Towing, the clean-up fee claim, the sale of untitled vehicles, the destruction of cash receipts, and the charges made to insurance companies. Sherman challenged Officer Buehrle's affidavit for failing to disclose to the state judge that the city attorney had informed Officer Buehrle that the increased billings to insurance companies were permitted under the city contract. Sherman also asserted Officer Buehrle knew Schellert was not a credible witness for a number of reasons. Of particular concern to Sherman was the failure of Officer Buehrle to advise the court that Schellert had been circulating a flyer to the public with the same allegations of insurance fraud and that Sherman's own private investigator had concluded Schellert was not a credible witness because of her vendetta against Sherman. The private investigator claimed to have passed this information on to Officer Buehrle before the officer's affidavit was prepared.

Sherman also attacked the search warrant, claiming it was overly broad and lacked a reasonable degree of specificity. Sherman objected to the seizure of cash and the business computers when all that needed to be seized to check Budget Towing's financial records was a "Tracker" Program,[5] which was known to Schellert and was disclosed to Officer Buehrle.

---

[4]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

[5]A specialized business program for the trucking industry.

Following the Franks hearing, the magistrate judge filed a report and recommendation with the following findings: (1) any information left out of Schellert's affidavit with respect to the clean-up charges was not deliberately omitted to create a false impression of criminal conduct; (2) vehicles were sold to the salvage yard without the proper title work even though title may have been transferred later; (3) cash receipts were actually destroyed even though those transactions may have been entered into the Tracker Program on the business computers; and (4) Schellert's testimony was credible, despite her history of personal problems, some of which were criminal in nature. The magistrate judge equated Schellert's credibility determination with that of an unidentified confidential informant, who is traditionally an individual with a history of criminal conduct and a number of felony convictions, but nonetheless deemed credible for purposes of the submission of an affidavit in support of a search warrant. Furthermore, the magistrate judge determined that the private investigator may not have specifically undermined Schellert's credibility with Officer Buehrle, but in any event Officer Buehrle independently sought to resolve any concerns about Schellert's credibility before allowing her to swear out her affidavit.

The magistrate judge also concluded the Franks standard only applies to government agents, such as Officer Buehrle. Officer Buehrle sought to corroborate all of Schellert's allegations against her former employer and reviewed the results of investigation with the prosecutor. Officer Buehrle never knew and did not believe that Schellert was lying or acting in reckless disregard for the truth. Therefore, the magistrate judge concluded there was no Franks violation and probable cause existed for the issuance of the search warrant.

Regarding Sherman's claim that the search warrant lacked specificity, the magistrate judge concluded that while the search warrant may not have been artfully drafted, it satisfied all reasonableness standards for the seizure of business records. The seizure of tax records, personal records, and cash from the business premises were within the realm of business records contemplated by the search warrant. Finally, the

magistrate judge ruled Officer Buehrle and the others executing the search warrant were acting in good faith, relying upon a judge's decision to issue the search warrant.

Following Sherman's objections to the magistrate judge's report and recommendation, the district court completed a *de novo* review of the record and entered its own order denying the motion to suppress. At sentencing, Sherman objected to the district court's refusal to allow expert testimony on the tax dollar loss for purposes of calculating Sherman's advisory guideline range. Sherman was sentenced to two months incarceration on each count, to be served concurrently, followed by one year of supervised release. This appeal followed.

## II. Franks Challenge

We review the district court's factual findings on a Franks claim for clear error and its legal conclusions *de novo*. United States v. Ketzeback, 358 F.3d 987, 990 (8th Cir. 2004) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). We review the district court's factual findings underlying a denial of a motion to suppress for clear error and its legal determinations of probable cause *de novo*. United States v. Stevens, 530 F.3d 714, 716 (2008), *cert. denied,* 129 S. Ct. 654 (2008). We review the district court's factual findings at sentencing for clear error and its construction and application of the guidelines *de novo*. United States v. Keiser, 578 F.3d 897, 905 (8th Cir. 2009).

The district court made specific factual findings relating to the information submitted to the state court judge for issuance of the search warrant from the evidence presented during the Franks hearing. Our review of those facts, summarized above, finds no clear error. Ketzeback*, supra*.

Sherman asserts the district court erred in relying on Schellert's explanation of the $35 clean-up fee because her statement was incomplete as clean up occurred not only at the accident site, but sometimes later when leaking fluids, etc., were removed from the tow truck bed. While Sherman's assertion may be true, the district court considered most significant Schellert's testimony that sometimes these clean-up fees were fictitiously added to the bill.

Sherman also challenges the district court's acceptance of Schellert's statements about the sale of vehicles without titles. The district court found Schellert told Officer Buehrle the vehicles did not have titles at the time of sale to the salvage yard. Sherman contended the titles were eventually delivered. Sherman also asserted the salvage yard acted as an excess storage area for his business and, if that information had been added to Schellert's affidavit, there would not have been sufficient probable cause to support the search warrant. The district court found Officer Buehrle attempted to corroborate this information by reviewing a number of Budget Towing documents, including handwritten notes of Sherman confirming payments had been received for vehicles for which there was not yet a title.

Similarly, Sherman asserts that Schellert's declaration that cash receipts had been destroyed was false because those transactions were recorded in the Tracker Program. The district court found that Schellert's statement about the cash receipts was not intentional or reckless misinformation, because Sherman had access to the Tracker Program where those records could be altered.

Finally, Sherman claims the district court erred by accepting Officer Buehrle's investigation prior to the preparation of the affidavits as there should have been a more detailed and thorough investigation into both Schellert's background and the billings made to insurance companies. The district court concluded the focus of a Franks objection is upon reckless or intentional omissions from an affidavit and not the underlying investigation. The district court concluded under Franks and United

-8-

States v. Curtis, 965 F.2d 610 (8th Cir. 1992), that Officer Buehrle did not intentionally or recklessly misstate the facts or omit material information from his affidavit.

Under the Fourth Amendment, a search warrant is valid if it is supported by probable cause. Stevens, 530 F.3d at 717-718 (citing United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002)). "Probable cause exists when a 'practical, common-sense' inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " Stevens 530 F.3d at 718 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

"[A] search warrant must be voided and the fruits of the search suppressed if a defendant proves by a preponderance of the evidence that (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause." United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008) (citing Franks, 438 U.S. at 155-56). "This rationale also applies to information that the affiant deliberately or with reckless disregard for the truth omits from the affidavit such that the affidavit is misleading and insufficient to establish probable cause had the omitted information been included." Id. (internal citations omitted).

"To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer 'must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.' " Id. (citing United States v. Schmitz, 181 F.3d 981, 986-87 (8th Cir.1999)) (alterations in original) (quoting United States v. Clapp, 46 F.3d 795, 801 n. 6 (8th Cir.1995)). "An affidavit submitted

-9-

in support of a warrant carries a presumption of validity." Id. (citing Franks, 438 U.S. at 171).

Both Schellert and Officer Buehrle appeared before the state judge and executed their affidavits, under oath, in support of the requested search warrant. Because most of Schellert's statements were based upon her personal information and experiences as an employee of Budget Towing, there is "an inherent indicia of reliability in the richness and detail of a first hand observation." Id. At 1074 (internal citation omitted). The state court was able to assess the credibility of Schellert, as an identified informant, by placing her under oath to execute her affidavit. Stevens, 530 F.3d at 718. The judge who issued this search warrant undoubtedly concluded she was credible because she had actual knowledge and provided detailed explanations of the business activities occurring at Budget Towing. Id. at 719. In addition, Officer Buehrle's affidavit presented sufficient evidence of corroboration to support a finding of probable cause. Id. This corroboration went beyond the "innocent, minor details" which supported a finding of probable cause in Stevens.

We conclude Officer Buehrle made a good faith effort to independently verify the allegations of Schellert and he completed an adequate, although arguably not perfect, investigation. There is nothing contained in either Schellert's affidavit or in Officer Buehrle's affidavit which was either recklessly inaccurate or misleading to the state court. While more information could have been included in the application for the search warrant, its absence does not diminish the factual basis to support a finding of probable cause. The district court's factual determinations for both the Franks hearing and the motion to suppress are not clearly erroneous and its legal conclusions are a proper application of the law. Neal, 528 F.3d 1069; Stevens, 530 F.3d 714; and Ketzeback, 358 F.3d 987.

### III. Particularity of the Search Warrant

Sherman asserts the district court erred in finding the particularity requirements had been satisfied for the issuance of a search warrant and the property to be seized. After reviewing the content of the warrant, the district court concluded under this court's ruling in United States v. Summage, 481 F.3d 1075 (8th Cir. 2007), *cert. denied*, 552 U.S. 1104 (2008), the authorization to seize all computer components and data was appropriate.

"To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." Id. at 1079 (citing United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999)). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." Id. (citing Horn, 187 F.3d at 788). The particularity requirement required under the Fourth Amendment is not a "hypertechnical" standard, but one of "practical accuracy." Id. (citing United States v. Peters, 92 F.3d 768, 769-770 (8th Cir. 1996)).

Sherman claims the warrant should have been limited to a seizure of the Tracker Program, because Tracker was well known in law enforcement. Sherman fails to acknowledge he had access to all components of the computer system used in his business and that the computer data could be manipulated, stored in different formats, or stored outside of the Tracker Program.

The first paragraph of the search warrant was tied to the specific fraudulent practices suspected, and the computer records identified in the second paragraph were likely to contain evidence relevant to those suspect practices. The search warrant necessarily needed to include all computer equipment and systems to effectively allow law enforcement to "recognize and seize the materials described." Horn, 187 F.3d at

788. "The failure of the warrant to anticipate the precise form in which [the data] would appear is not fatal." United States v. Lowe, 50 F.3d 604, 607 (8th Cir. 1995).

The district court's factual determinations are not clearly erroneous and its legal conclusions are a proper application of law. Summage, 481 F.3d 1075.

## IV. Sentencing

Sherman claims the district court erred at sentencing by not allowing him to present expert testimony to show the actual tax dollar loss suffered by his failure to report all income was under the threshold of $30,000 contained in United States Sentencing Guideline § 2T4.1(E). To achieve this end, Sherman intended to introduce new, accelerated depreciation costs and tax benefits on all the tax returns in question. Had this evidence prevailed, Sherman argues his guideline range would have allowed a sentence of home detention and probation. U.S.S.G. § 5C1.1(c).

Under the district court's analysis, after giving Sherman credit for acceptance of responsibility, the guideline range was set at a level 12. With Sherman in a criminal history category I, the advisory guideline range of imprisonment was 10 to 16 months. This would have placed Sherman in Zone C of the advisory guidelines sentencing table. U.S.S.G. § 5C1.1(d)(2). The district court granted Sherman a downward variance and imposed a prison sentence of two months on each count to be served concurrently followed by one year of supervised release. Restitution was set at $54,058.

In his sentencing memorandum to the district court, Sherman argued that one of the reasons he was advocating for home confinement under U.S.S.G. § 5C1.1(c) was because 18 U.S.C. § 3553(a)(7) required the court "to provide restitution to the victims," and he needed to be under home confinement so he could pay his restitution,

-12-

admitted to be in excess of $50,000.[6]  Sherman never claimed that the restitution ordered by the district court should be reduced to under the $30,000 threshold.

U.S.S.G. § 2T1.1(c)(1) provides that "[i]f the offense involved . . . a fraudulent or false return . . . the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." (underscore in original).   It is the attempted loss (tax avoided), not the actual loss (adjusted tax avoided), which is the focus of this definition.  Sherman made certain deductions on his tax returns which resulted in his original tax obligation.  When the additional underreported income was included and then off-set by the deductions taken in the original tax returns, the "tax loss," which "was the object of the offense," was $54,058.

It is only after having been convicted of fraudulent statements on his tax returns that Sherman now wishes to use previously unclaimed, or unused, accelerated depreciation schedules or other  previously unclaimed deductions to reduce the actual loss. Sherman submits that under Note (A) of U.S.S.G. § 2T1.1(c)(1), he should have been allowed to use previously unclaimed tax deductions as a basis to reduce the tax loss as a "more accurate determination of the tax loss . . . ." Id.  The government's position is that the definition of tax loss did not allow the district court to take into consideration these previously unclaimed deductions.

Sherman claims the district court erred in not applying the rationale of United States v. Gordon, 291 F.3d 181 (2d Cir. 2002).  Gordon is factually distinguishable. We find that the "total amount of loss that was the object of the offense" under section 2T1.1(c)(1) was $54,058.  This figure is what Sherman sought to avoid paying in taxes by failing to properly report income and making false declarations on his tax returns.  Under the particular circumstances of this case, the district court properly

------

[6]Civ. 07-00526, Eastern District of Missouri (Docket 61 at p. 7).

considered section 2T1.1(c)(1) and Sherman's own pleas for leniency in imposing a sentence at a level below the recommended guideline range.  <u>United States v. Moore</u>, 581 F.3d 681 (8th Cir. 2009).

## V.  Conclusion

The judgment of the district court is affirmed.

_____