# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-1046
_____

Dennis Ryno

*Plaintiff - Appellant*

v.

City of Waynesville; Waynesville Police Department; Daniel Cordova; Kevin
Hillman; John Meir; Victor Weir

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: November 17, 2022
Filed: January 26, 2023
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

At the end of a week-long stalking and harassment investigation, police arrested Dennis Ryno after he drove down a dead-end street and backed into a driveway next to the one where the truck belonging to his ex-girlfriend—who had a full order of protection against him—was parked. The officers later searched Ryno's home and electronics pursuant to warrants based on affidavits containing inaccuracies. Prosecutors charged Ryno with felony stalking and harassment under

Missouri law, but eventually dismissed the charges. Following these events, Ryno brought a variety of state and federal claims against the City of Waynesville (the City), the Waynesville Police Department (WPD), WPD Chief Daniel Cordova, WPD Officer John Meir, WPD Officer Victor Weir, and Pulaski County Prosecutor Kevin Hillman (collectively, Appellees). The district court[1] dismissed most of Ryno's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and later granted the Appellees' motion for summary judgment on Ryno's remaining claims. Ryno now appeals the grant of summary judgment. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

In August 2012, Ryno and Crystal Aynsley—Ryno's romantic interest of over four years—had an "out of control" argument at Aynsley's apartment which escalated to such a degree that the neighbors called the police. The next day, Aynsley's landlord caught Ryno lingering around the apartment complex, taking pictures. She called the police. Officer Weir arrived on the scene to find Ryno hiding behind some bushes near a dumpster. Officer Weir approached Ryno, who told him that he was "keeping an eye on" Aynsley, as he feared that she was "making a mistake" with a married soldier. Officer Weir proceeded to pat Ryno down, discovering a digital voice recorder, binoculars, and a digital camera containing pictures of Aynsley's apartment and the soldier's vehicle. Officer Weir then informed Ryno that he was not permitted to return to the property.

From August 2012 through the middle of 2013, Ryno repeatedly drove by and lingered around Aynsley's apartment complex. He would drive around places where Aynsley was and watch her. He sent people to talk to Aynsley on his behalf. Aynsley started keeping a journal in October 2012 documenting all her run-ins with Ryno, and by May 2013, she had "almost filled [two] spiral notebooks." Based in

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

part on this journal, Aynsley received an ex parte order of protection against Ryno in July 2013. Despite the order, Ryno persisted, and in November 2013, Pulaski County prosecutors filed criminal charges against him for stalking and harassing Aynsley.

On February 27, 2014, while Ryno's criminal case was pending, Aynsley received a full order of protection against him, to remain effective until February 26, 2015. The order provided that Ryno was not to communicate with Aynsley, nor was he to "molest, stalk, or disturb [her] peace." Around the same time, Ryno filed for his own order of protection against Aynsley, alleging that she was setting him up and following him around to make it look like he was stalking her. Shortly thereafter, in March 2014, Ryno pled guilty to harassment of Aynsley and received a suspended sentence with two years of probation. Importantly, the judgment of the Pulaski County Circuit Court—signed by Ryno—provided that, as a condition of his probation, he must "submit to searches of person, place [and] residence at [the] request of [a probation officer] or [law enforcement officer]." At all times relevant to this case, Ryno was on probation and subject to this search condition.

For approximately six months after Ryno's guilty plea, all was quiet. However, on September 29, 2014, Aynsley and a friend filed a report alleging that, on September 25, 2014, they had seen Ryno in a nearby parking lot and that he had then followed them to McDonald's. On the same day, Aynsley's landlord filed a report alleging that, on both September 27th and 28th, she had seen "the gentleman that my tenant, Crystal Aynsl[e]y had told me about" driving near and around Aynsley's apartment complex.

Based on these reports, on October 5, 2014, WPD Officer Kyle Prock prepared a probable cause statement alleging that Ryno had violated Aynsley's order of protection. However, no further action was taken at that time. Then, on October 18, 2014, Aynsley's landlord provided another statement to the WPD alleging that she had seen a man matching Ryno's description drive slowly through the apartment

complex's parking lot that same day. Aware that Aynsley had an order of protection against Ryno, WPD began a weeklong investigation of Ryno on October 23, 2014.

All events occurred in Waynesville, Missouri. Waynesville is a small town, consisting of a population of around 5,000 people. There are few purely nonresidential streets, and one main road, Ichord Avenue, connects much of the town. At the time of the investigation, Ryno lived in Plato, Missouri, approximately 34 miles away.[2] Nonetheless, Ryno routinely traveled to Waynesville for innocuous purposes. Often, he sat in his vehicle in the Price Cutter parking lot in the middle of town, which allowed him to use public wi-fi. Indeed, during the investigation, the officers knew this area to be Ryno's usual parking spot. This parking lot sits along Ichord Avenue.

On October 23, Chief Cordova and Officer Weir saw Ryno parked in his usual spot near the Price Cutter between 4:30 PM and 4:45 PM. Later that day, Chief Cordova saw what he believed to be Ryno's car drive by Aynsley's apartment complex. The next day, October 24th, Chief Cordova and Officer Meir saw what they believed to be Ryno's car drive slowly past Aynsley's apartment complex. Later, they observed Ryno and Aynsley separately at a gas station. The officers could not say who arrived first, but Chief Cordova thought that Ryno was staring in Aynsley's direction. Toward the end of surveillance that day, the officers saw a vehicle that they believed to be Ryno's drive slowly past Aynsley's apartment complex again.

The WPD paused surveillance for the weekend of October 25th and 26th. Then on October 27th, Officer Weir surveilled Aynsley to see if Ryno would follow her. He saw Ryno drive by on Ichord Avenue once while Aynsley was in the Price Cutter and again while she was at a nearby restaurant. Officer Weir also saw Ryno

---

[2]Although the distance is not in the record, we "may take judicial notice of a fact for the first time on appeal," Gustafson v. Cornelius Co., 724 F.2d 75, 79 (8th Cir. 1983), including the distance between two places, Mut. Benefit Life Ins. Co. v. Robinson, 58 F. 723, 732 (8th Cir. 1893).

drive near Aynsley's apartment complex. On October 28th, Aynsley went to a restaurant in the middle of town with her friend, Kevin Phillips. While they were eating, Ryno drove by on Ichord Avenue at least four times. Finally, on October 30th, Aynsley told Chief Cordova that she had invited Phillips to join her for coffee. Chief Cordova and Officer Meir then observed Aynsley as she drove to Phillips's house at 104 Summit Pass, parked her truck in the driveway, and headed to town with Phillips in his car. Chief Cordova and Officer Meir waited in the parking lot while Aynsley and Phillips went into the Price Cutter to get coffee. As they waited, the Officers noted that Ryno was parked outside near his usual parking spot. After a while, Ryno left.

Chief Cordova and Officer Meir then drove to the area of Summit Pass. While they were there, Ryno drove past them headed in the direction of Phillips's house, so they turned around to follow him. Summit Pass is a dead-end street. Ryno drove to 104 Summit Pass, then put his car in reverse and backed into the driveway of 102 Summit Pass, the residence next door to Phillips's house. Officer Meir pulled up and blocked Ryno's car in the driveway.

Chief Cordova then approached Ryno and started asking him questions. When Chief Cordova asked Ryno, "Do you have any friends down this street?" Ryno stated, "I had a person who was following me earlier and I turned off and then they went down this direction." He further explained that his intention was merely to use Summit Pass to turn around. Chief Cordova and Officer Meir then arrested Ryno without a warrant for aggravated stalking and aggravated harassment. Officer Weir had no personal involvement in the arrest.

An inventory search of Ryno's car following his arrest revealed the following: a wig, hats, gloves, a camcorder, recording devices, a pair of binoculars, a police scanner programmed to the Waynesville frequencies, rope, coveralls, surgical gloves, rolls of black trash bags, a hatchet, a pickaxe, a shovel, a crowbar, clothes, and personal hygiene items. A subsequent search of Ryno's car revealed a laptop

computer, an external hard drive, papers, and cameras. These searches are unchallenged on appeal.

The day after Ryno's arrest, Pulaski County prosecutors charged him with felony stalking and harassment. A few days later, Officer Weir spoke with Ryno's brother and sister, Terry Ryno and Pamela Hutsell. Hutsell told Officer Weir that Ryno "types, ya know, he types everything. He, he just, ya know, he keeps notes on everything . . . ." Following this interview, Officer Weir applied for and obtained warrants to search, among other things, Ryno's home and computer. The affidavit for Ryno's home provided that:

> On 10/30/2014 Dennis Ryno was arrested for violation of an exparte and stalking after he followed Crystal Aynsley to Summit Pass. There is one way in and out of that area and he has no reason to be there especially since she had an order of protection against him. This arrest was the result of a three wing [sic] undercover operation wherein Mr. Ryno was observed stalking the victim repeatedly. During the inventory of his vehicle a computer, digital camera and notes were among some items seized. In the trunk of Ryno's vehicle the following were located: rope, overalls, gloves (2 sizes), and shovel, hatchet, pick and trash bags. . . . Mr. Ryno is on probation after pleading guilty to Harassment of this same victim and a term and condition of his probation is that he is subject to searches of his residence at the request of law enforcement.

R. Doc. 67-1 at 7. The affidavit for Ryno's computer states:

> At the time of his arrest, Waynesville Police had been conducting a surveillance operation of Mr. Ryno for multiple days. During the course of that investigation, Mr. Ryno was seen driving by the victim's residence multiple times, following the victim multiple times, and sitting outside of business[es] where the victim was located on multiple times. At the time of his arrest, Mr. Ryno had multiple items with him that were suspicious. The items included a police scanner set to the Waynesville PD frequency, a camera, binoculars, recording devices, garbage bags, a shovel, a pick ax, a hatchet, coveralls, a change of

-6-

clothes, surgical gloves, rope, and soap. It should be noted that Mr. Ryno is on probation after pleading guilty to harassment of the same victim and a term and condition of his probation is that he is subject to searches at the request of law enforcement. . . . On 11/02/2014 I spoke to Pamela Hutsell who is the sister of Dennis Ryno. She told me that Ryno always writes everything down and then types his information into the computer.

R. Doc. 67-1 at 23. Officer Meir and Chief Cordova reviewed and approved these affidavits, the Circuit Court of Pulaski County issued the warrants, and the searches were conducted. The searches yielded no additional incriminating evidence. Prosecutors eventually dropped criminal charges against Ryno.

## II.

In 2020, Ryno filed this action in Missouri state court, asserting a variety of claims against the Appellees, including claims under 42 U.S.C. § 1983. After Appellees removed the suit to the district court, Ryno filed an amended complaint, alleging claims of unreasonable seizure, conspiracy to cause false arrest, unreasonable search, fabrication of evidence, excessive bail, abuse of process, and negligent hiring, training, and supervision. Appellees filed a motion to dismiss Ryno's claims for failure to state a claim. The district court granted the motion in part, holding that Ryno's state-law claims were barred by Missouri's statute of limitations, Mo. Rev. Stat. § 516.130. It then dismissed Ryno's claims against the City, WPD, and Prosecutor Hillman. After this ruling, only three claims remained: Ryno's § 1983 claims against Chief Cordova, Officer Meir, and Officer Weir for unreasonable seizure, conspiracy to cause false arrest, and unreasonable search. On appeal, Ryno does not challenge the dismissal of any of his other claims.

Following discovery, the Appellees moved for summary judgment on Ryno's remaining claims. They argued that they were entitled to qualified immunity because Ryno failed to show any Fourth Amendment violation, and even if he did, it was not clearly established. The district court first addressed Ryno's claim for

unreasonable seizure. It held that the Appellees were entitled to summary judgment on this claim because even though they arrested Ryno without a warrant, at the time of his arrest, "the threshold of probable cause was met and exceeded due to the allegations of multiple witnesses and the observations of [Officers] Cordova, Meir, and Weir that Ryno's conduct amounted to harassing, stalking, or disturbing Aynsley's peace." Further, the district court reasoned, "Even if Ryno's conduct did not violate [Aynsley's] Order of Protection, an arrest made pursuant to a mistaken belief about applicability of such an order does not preclude a finding that the officer had arguable probable cause to arrest." Ultimately, the district court held that the Appellees were entitled to summary judgment on this claim because "the totality of the circumstances known to [them] on October 30, 2014, gave them sufficient probable cause to believe that a crime had been or was being committed."

Next, the district court granted summary judgment in favor of the Appellees on Ryno's conspiracy-to-cause-false-arrest claim. It reasoned that such a claim requires a plaintiff to "prove a deprivation of a constitutional right or privilege in order to prevail," and since Ryno could prove no underlying constitutional violation, Appellees were entitled to summary judgment.

Finally, the district court reached Ryno's claims for unreasonable search of his home and electronics. Ryno argued that these searches violated the Fourth Amendment because of various "false statements" in the warrant affidavits, without which the warrants never would have issued. After considering this argument and evaluating the affidavits in light of the whole record, the district court concluded that "the search warrants in this case were supported by probable cause based on the warrant affidavit, despite its inaccuracies. If the inaccuracies were removed from the warrant affidavit, probable cause still exists for the search of Ryno's home and electronics." Thus, the district court granted Appellees' motion for summary judgment on this final claim as well.

Ryno appeals the district court's grant of summary judgment. In his reply brief, Ryno concedes that his unreasonable-seizure and conspiracy-to-cause-false-

-8-

arrest claims do not involve Officer Weir. Additionally, Ryno clarified that his appeal of the unreasonable search claim is limited to "the district court's determination about the computer and home searches."

## III.

"We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party." Wages v. Stuart Mgmt. Corp., 798 F.3d 675, 679 (8th Cir. 2015). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007). Importantly, the "mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Initially, despite briefing from both parties on the issue of qualified immunity below, the district court chose instead to address the merits of Ryno's claims on summary judgment. And although there is some equivocal language in the order, on appeal the parties agree that the district court did not rule on qualified immunity. Generally, "[w]hen the district court fails to rule on qualified immunity, we will remand the case to the district court to decide the qualified-immunity question." Ferguson v. Short, 840 F.3d 508, 511 (8th Cir. 2016). However, we need not remand the case where, as here, the issues presented on appeal are purely legal and the parties briefed qualified immunity both before the district court and before us. See Hamner v. Burls, 937 F.3d 1171, 1176 (8th Cir. 2019) (holding that whether "allegations show a violation of a clearly established right is a purely legal issue that is amenable to consideration for the first time on appeal" especially where the parties "have been given notice and an opportunity to be heard on the issue"). Further, evaluating Ryno's claims under the qualified-immunity framework now furthers the policies behind the doctrine, which include "resolving immunity questions at the earliest

possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). Therefore, we will address Ryno's claims under the qualified immunity framework.

To determine whether Appellees are entitled to qualified immunity, we conduct a two-part inquiry: "(1) [whether] the facts, viewed in the light most favorable to [Ryno], demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012) (first and third alterations in original) (citation omitted). A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). As the Supreme Court has reiterated, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" City of Tahlequah v. Bond, 142 S. Ct. 9, 11 (2021) (per curiam) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). "We have the 'discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.'" Lombardo v. City of St. Louis, 38 F.4th 684, 690 (8th Cir. 2022) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). "If we conclude that the alleged facts do not violate a constitutional right, then we need not address the second inquiry, and the defendant[s] will be entitled to qualified immunity." Groenewold v. Kelley, 888 F.3d 365, 371 (8th Cir. 2018).

A.

First, we address Ryno's § 1983 claim for unreasonable seizure under the Fourth Amendment. We begin by analyzing the first prong of the qualified-immunity test: whether the facts, viewed in the light most favorable to Ryno, demonstrate the deprivation of a constitutional right. Jones, 675 F.3d at 1161. However, we must "simultaneously view[] the facts from the perspective of a reasonable officer on the scene" given the probable cause standard. Royster v. Nichols, 698 F.3d 681, 688 (8th Cir. 2012). The Fourth Amendment protects the

"right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause." Webster v. Westlake, 41 F.4th 1004, 1010 (8th Cir. 2022). Officers have probable cause to make a warrantless arrest "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011) (citation omitted).

Here, at the time of Ryno's arrest, at least Officers Weir and Meir were partially familiar with the 2012-2013 background that culminated in Ryno's pleading guilty to a charge of harassing Aynsley. Further, all of the officers knew about Aynsley's order of protection against Ryno. Additionally, in late September 2014 and into the middle of October 2014, the WPD received several reports from multiple witnesses about Ryno's close proximity to Aynsley. During the weeklong surveillance of Ryno, the officers saw him drive by Aynsley's apartment complex multiple times. They also saw Ryno sitting outside of businesses where Aynsley was located multiple times.

Finally, on October 30, 2014, Chief Cordova and Officer Meir observed Ryno drive down Summit Pass—the dead-end street where Phillips lived at 104 Summit Pass, and then slowly reverse down the street and back into 102 Summit Pass, the driveway next to Phillips's.

The question that we must answer is whether, under these circumstances, a reasonable officer would have believed Ryno had committed or was committing an offense. Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010). The 2012-2013 background; the witness statements, see id. at 816-17 ("[O]fficers are generally entitled to rely on the veracity of information supplied by the victim of a crime . . . .") (alterations in original) (citation omitted); the officers' observations of Ryno driving by Aynsley's apartment complex and presence in the same places as Aynsley throughout the week of October 23-30; Ryno's presence in the driveway

-11-

adjacent to the driveway in which Aynsley was parked; and Ryno's inability to adequately explain why he was on Summit Pass convince us that a reasonable officer would have believed Ryno had committed or was committing a violation of Mo. Rev. Stat. § 455.085.2 (violating an order of protection), Mo. Rev. Stat. § 565.090.1 (harassment), or Mo. Rev. Stat. § 565.225.2-3 (stalking). Accordingly, there was no Fourth Amendment violation, and the officers are entitled to qualified immunity.

Even if the officers did not have probable cause to arrest Ryno, Ryno's right to be free from unreasonable seizure was not clearly established under these facts. In other words, the officers had *arguable* probable cause. "Although this Court's opinions do not always expressly state as much, the terms 'probable cause' and 'arguable probable cause' are not interchangeable, and each term serves a different purpose within the qualified immunity analysis." Brown v. City of St. Louis, 40 F.4th 895, 901 (8th Cir. 2022). While the issue of probable cause addresses the first, constitutional-violation prong, "the issue of *arguable* probable cause is properly part of the resolution of qualified immunity's second prong, the clearly established prong." Id. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Borgman, 646 F.3d at 523.

Here, at minimum, it was objectively reasonable for Chief Cordova and Officer Meir to believe that Ryno had committed or was committing a violation of Mo. Rev. Stat. § 455.085.2 (violating an order of protection), Mo. Rev. Stat. § 565.090.1 (harassment), or Mo. Rev. Stat. § 565.225.2-3 (stalking). Accordingly, arguable probable cause exists, meaning that it was not clearly established that arresting Ryno on these facts would violate his right to be free from unlawful seizure. Thus, we affirm the district court's grant of summary judgment on Ryno's unreasonable-seizure claim because Chief Cordova and Officer Meir are entitled to qualified immunity.

B.

We now move to Ryno's § 1983 claim against Chief Cordova and Officer Meir for conspiracy to cause false arrest or unreasonable seizure. A § 1983 conspiracy claim requires a claimant to show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). But a claimant cannot succeed on such a claim without first proving the "deprivation of a constitutional right or privilege." Id. Because we conclude that no unreasonable seizure occurred, see supra Section III.A., Chief Cordova and Office Meir are entitled to qualified immunity on this claim as well.

C.

Finally, we address Ryno's § 1983 claim for the unreasonable search of his home and computer under the Fourth Amendment. We begin again by asking whether Ryno can prove a constitutional violation. Ryno is correct in arguing that, in certain circumstances, one may succeed in proving a Fourth Amendment violation where he shows an officer's "probable cause statement contained a 'deliberate falsehood'" or that the officer "acted with 'reckless disregard for the truth' when he prepared it." Murray v. Lene, 595 F.3d 868, 872 (8th Cir. 2010) (citation omitted). And as Ryno further asserts, a warrant containing material omissions may vitiate the warrant in certain circumstances. See United States v. Ketzeback, 358 F.3d 987, 990 (8th Cir. 2004). However, we need not address these issues because, at the time of the searches of Ryno's home and computer, he was subject to a probation condition that he "submit to searches of person, place [and] residence at [the] request of [a probation officer] or [law enforcement officer]."

The Supreme Court has long held that a probationer has limited Fourth Amendment rights because of a diminished expectation of privacy. See Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987). Indeed, the "touchstone of the Fourth

Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Knights, 534 U.S. 112, 118-19 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).  Ryno's "status as a probationer subject to a search condition informs both sides of that balance." Id. at 119.  After all, "[p]robation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.'" Griffin, 483 U.S. at 874 (citations omitted).  "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." Knights, 534 U.S. at 119.

Here, the Missouri "judge who sentenced [Ryno] to probation determined that it was necessary to condition the probation on [Ryno's] acceptance of the search provision." Id.  Further, "[t]he probation order clearly expressed the search condition and [Ryno] was unambiguously informed of it." Id.  Indeed, Ryno signed the judgment establishing the search condition.  "The probation condition thus significantly diminished [Ryno's] reasonable expectation of privacy." Id. at 119-20. In such a circumstance, the Fourth Amendment "requires no more than reasonable suspicion to conduct a search of th[e] probationer's house," even without a warrant. Id. at 121.

We conclude that reasonable suspicion supported the search of Ryno's house. "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010).  In the search-warrant affidavit for Ryno's home, Officer Wier misrepresented two facts.  First, he averred that, "[Ryno] followed Crystal Aynsley to Summit Pass." This did not happen.  Second, he averred that "Ryno was observed stalking the victim repeatedly."  Viewing the facts in the light most favorable to Ryno, this is an overstatement as the officers only saw Ryno drive by Aynsley's

apartment complex multiple times and sit in public areas with her nearby. However, the Constitution does not require "that every fact in the warrant affidavit is necessarily correct," but only "that the information put forth is believed or appropriately accepted by the affiant as true." Franks v. Delaware, 438 U.S. 154, 165 (1978). Moreover, Officer Weir truthfully averred that the officers saw Ryno on Summit Pass, a dead-end street. Further, Officer Weir described the many suspicious items discovered in Ryno's car. Finally, Officer Weir brought the search condition of Ryno's probation to the court's attention. Despite inaccuracies in the search-warrant affidavit for Ryno's home, our analysis above, see supra Section III.A., combined with what the officers found in Ryno's car is sufficient for us to determine that the officers had at least reasonable suspicion to search Ryno's home, as required by Knights.

Finally, we turn to the search of Ryno's computer. Where a probationer is unambiguously aware of a broad search condition like Ryno's, we have held that searches of personal property are permissible, even absent suspicion. See, e.g., United States v. Kuhnel, 25 F.4th 559, 564 (8th Cir. 2022) (holding that search of probationer's vehicle pursuant to probationary search condition was "reasonable and permissible even in the absence of suspicion"); see also United States v. Jackson, 866 F.3d 982, 984-85 (8th Cir. 2017) (concluding that search of supervised releasee's cell phone was reasonable even absent suspicion when he was aware of search condition and resided in residential reentry facility which prohibited cell phones). However, we have never held that a probationary search condition authorizes the search of a probationer's personal property in *any* circumstances absent suspicion. Given that the government may search a probationer's home, an area which lies "[a]t the very core" of the Fourth Amendment's protections, Kyllo v. United States, 533 U.S. 27, 31 (2001), based on nothing more than reasonable suspicion—at least when he is subject to a search condition—the same standard is more than sufficient to authorize the search of a lesser-protected area like a computer. We thus assume without deciding that the reasonable suspicion standard applies to the search of Ryno's computer.

In the search-warrant affidavit for Ryno's computer, there is only one slight inaccuracy. Officer Weir averred that, during the Ryno surveillance, "Ryno was seen driving by the victim's residence multiple times, following the victim multiple times, and sitting outside of business[es] where the victim was located on multiple times." Viewing the facts in the light most favorable to Ryno, technically, the officers did not witness him following Aynsley. Ryno also takes issue with Officer Weir's statement that "I spoke to Pamela Hutsell who is the sister of Dennis Ryno. She told me that Ryno always writes everything down and then types his information into the computer." However, we conclude that it is at least an accurate paraphrasing of her statement, which the recording demonstrates was, "I know he types, ya know, he types everything. He, he just, ya know he keeps notes on everything . . . ."

Because there is only one minor inaccuracy in the otherwise thorough search-warrant affidavit for Ryno's computer, and the issuing judge found that there was enough evidence to support a finding of probable cause, that judgment is entitled to deference on appeal. See Illinois v. Gates, 462 U.S. 213, 236 (1983); see also Franks, 438 U.S. at 164-65. Even if it were not, our analysis above, see supra Section III.A., the items found in Ryno's vehicle during the searches, and Hutsell's statement support a finding of at least reasonable suspicion. Thus, we affirm the district court's grant of summary judgment on Ryno's unreasonable-search claim because the Appellees are entitled to qualified immunity.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____

-16-