UNITED STATES of America,
Plaintiff–Appellee,

v.

Lowell Alvin HAHN,
Defendant–Appellant.

No. 90–8134.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1991.

Elizabeth Rogers, First Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender (WTX), El Paso, Tex., for defendant-appellant.

Wayne F. Speck, LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA[1], District Judge.

GARWOOD, Circuit Judge:

Defendant-appellant Lowell Hahn (Hahn) was convicted, on his conditional plea of guilty under Fed.R.Crim.P. 11(a)(2), of possession of unauthorized access devices and credit card fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (3), and of two counts of use of a false social security number, contrary to 42 U.S.C. § 408(g)(2). In this appeal from his conviction, Hahn challenges the denial of his motion to suppress, contending that the evidence was obtained in violation of his Fourth Amendment rights. Alternatively, Hahn challenges a portion of the restitution order included in his sentence. We reverse and remand on the motion to suppress issue, and do not reach the restitution issue.

### Facts And Proceedings Below

In 1983, Hahn jumped bail on a federal tax evasion charge pending in federal court in California. He managed to elude capture until he was finally discovered in the Midland, Texas area in 1988 using the alias

---

1. District Judge of the Southern District of Texas, sitting by designation.

"Jay Woods." On September 6, 1988, Internal Revenue Service (IRS) agents arrested Hahn pursuant to a federal arrest warrant for the California bail jumping offense. At the time of the arrest, the IRS agents, acting with the information that Hahn was "armed and dangerous," asked Hahn whether he had any weapons with him. Hahn told the agents that he had a rifle in the trunk of his car and a knife beside the driver's seat. The agents opened the vehicle, using keys received from Hahn, and discovered the knife and a loaded rifle. After unloading the rifle, the agents placed the weapons in the locked trunk, but did not conduct an additional search at that time.

Hahn's vehicle was impounded with the assistance of the Midland police department, who contacted their contract wrecker company. The wrecker company towed the car to its private lot, which had public access. Meanwhile, Hahn was taken to Midland City Hall and booked on the bail jumping charge. At that time, Hahn was found in possession of several credit cards in the name of "Woods," a driver's license bearing the name "Jay Lawrence Woods" and Hahn's photograph, and an automatic teller machine access device in the name of "J.L. Woods."

On the following day, September 7, 1988, Hahn appeared before the United States Magistrate for an initial appearance/removal hearing. Hahn requested appointment of counsel, and the magistrate questioned Hahn about his ability to pay. Hahn was hesitant to answer questions regarding his financial affairs, but indicated that if he could "see an inventory of what [the agents] impounded," he would know whether he had funds to pay a lawyer. Hahn clearly indicated that he thought he had money in the car, but he had no way to retrieve it and did not even know whether

it was still there.[2] At the conclusion of this hearing, the magistrate appointed counsel and recessed the hearing to permit Hahn to consult with counsel.

Concerned about Hahn's indications that his vehicle contained a large sum of cash, the prosecutor asked the IRS agents about the security of Hahn's vehicle. When the prosecutor learned that the car was not in police custody but was on a private lot, the prosecutor urged the agents to "go inventory this man's car, because if he does have some money in the car and it comes up missing, then you guys will be sued." Four IRS agents then went to the lot, procured the key to Hahn's vehicle from the lot custodian, and performed a thorough inventory search. The agents found a number of items, including $5,450 in cash, $1,000 in travelers' checks, several items of jewelry, and some gift-wrapped boxes. These items, which were of obvious value, were seized for safekeeping at the IRS office. Included within the items inventoried but not taken from the vehicle during this search were banking documents in the names of "Jay L. Woods" and "Henry Leon Waggoner," real estate and insurance papers, and a passport in the name of "Jay Lawrence Woods" bearing Hahn's photograph. Additionally, a number of credit cards, account statements, and insurance documents in the Woods name were found in a closed but unlocked briefcase on the front seat of the car. The entire inventory was recorded and later admitted into evidence at the suppression hearing.

After discussing the results of the inventory with the agents who searched the vehicle, a senior IRS special agent concluded that the passport, banking documents, and the briefcase containing the credit cards and invoices, which were not removed during this search, should also be seized. Accordingly, the agents retrieved those items

---

2. When questioned about his ability to pay for a lawyer, Hahn responded:

"That's a good question. When I was arrested, I believe I had the funds, but I don't know now what the Government—what's been done with the car. There was [sic] funds in the car and I don't know if those funds are there now. If they are, we've got to have access to them.

"....

"If I could see an inventory I could—I might be willing to (inaudible), your Honor, if I could see an inventory of what they impounded and know what they found in the car...."

from Hahn's vehicle the next day, September 8, 1988.

After a lengthy investigation, a superseding indictment was filed on August 10, 1989, which charged Hahn with one count of possessing unauthorized access devices (credit cards), in violation of 18 U.S.C. § 1029(a)(3); ten counts of using an unauthorized access device with intent to defraud, in violation of 18 U.S.C. § 1029(a)(2); twelve counts of giving a false social security number to obtain credit, in violation of 42 U.S.C. § 408(g)(2); two counts of making a false statement to a federally insured bank, in violation of 18 U.S.C. § 1014; and three counts of making a false statement to an agency of the United States, in violation of 18 U.S.C. § 1001.

Hahn filed a motion to suppress the evidence seized from the vehicle. The district court denied the motion after holding an evidentiary hearing on the issue, finding that the search had been conducted in conformity with Midland police inventory policy (although apparently inadvertently), and that the search was "undertaken in good faith and as a caretaking function." Hahn then filed a motion for reconsideration, which was also denied.

Confronted with the district court's refusal to suppress the overwhelming incriminating evidence, Hahn then, pursuant to agreement with the prosecution, entered a conditional guilty plea to the charge of possession of unauthorized credit cards, and to two counts of giving a false social security number to obtain credit. The plea agreement reserved Hahn's right to appeal the district court's ruling on his motion to suppress. The district court accepted Hahn's plea pursuant to the agreement and subsequently sentenced him to twenty-one months' imprisonment on each count, to run concurrently. In addition, the court imposed three years' supervised release on the credit card offense, and concurrent one-year terms on the social security number

offenses; restitution in the amount of $224,489.68; and special assessments totaling $150. In accordance with the plea agreement, the remaining twenty-five counts were dismissed. Hahn timely filed a notice of appeal. His primary challenge on appeal is to the district court's ruling on his motion to suppress.[3]

## Discussion

■ In reviewing the district court's ruling on Hahn's motion to suppress, we must accept the district court's purely factual findings unless they are clearly erroneous or influenced by an incorrect view of the law. *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984). The ultimate determination of reasonableness of the search, however, is a conclusion of law. *See United States v. Basey,* 816 F.2d 980, 988 (5th Cir.1987) (investigatory stop). Our review of such conclusions is plenary. *See United States v. Muniz–Melchor,* 894 F.2d 1430, 1439 n. 9 (5th Cir.1990).

This case involves two disputed "searches," or entries into Hahn's impounded vehicle. The first of these was a purported "inventory search" on September 7; the second involved the September 8 seizure of incriminating evidence discovered during the September 7 search. If the September 7 search was valid, that of September 8 would also be valid as based on probable cause.[4] *See United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985) ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband...."). If the September 7 search is invalidated, however, the second search would then appear to fail as well under the "fruits of the poisonous tree" doctrine, *see Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963), and the government does not contend otherwise.

---

3. Hahn's only other complaint on appeal relates to the restitution order included in the sentence. We do not reach that issue.

4. The district court specifically found that, based on the results of the September 7 "inventory" search, the IRS agents had cause to retrieve the incriminating documents during the September 8 search and copy them for purposes of investigation.

Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). This Court has articulated the rationale behind inventory searches: "An inventory of an automobile's contents protects the owner's personal property while it is in police custody, and reciprocally protects the police against unfounded claims of lost, stolen, or damaged property." *United States v. Judge*, 864 F.2d 1144, 1144–45 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990). However, because they represent a delicately balanced exception to the general requirement for a warrant, inventory searches may not be "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, — U.S. —, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). Accordingly, the Supreme Court has dictated that " 'a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2610–11, 77 L.Ed.2d 65 (1983) (quoting *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981)). Hahn challenges the district court's refusal to suppress items found in his closed though unlocked briefcase in his vehicle, claiming that the district court erred in finding that federal agents who unknowingly followed local police policy for conducting inventory searches satisfied the constitutional requirement that the search adhere to standard procedures.

In a line of cases beginning with *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000 (1976), the Supreme Court has indicated that one of the most important factors making inventory searches reasonable is adherence to standard police procedures. In *Opperman*, the Court assessed the reasonableness of an inventory search of a glove compartment in an abandoned vehicle impounded by the police. Finding that the searchers followed standard police procedures, "prevailing throughout the country and approved by the overwhelming majority of courts," the Court concluded that the search met the requirements of the Fourth Amendment. *Id.* 96 S.Ct. at 3100. Several years later, in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Court reaffirmed the principles of *Opperman*, stating:

> "We emphasize that, in this case, the trial court found that *the Police Department's procedures mandated the opening of closed containers* and the listing of their contents. Our decisions have always adhered to the requirements that inventories be conducted according to standardized criteria." *Bertine*, 107 S.Ct. at 742, n. 6 (emphasis added) (citing *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2610–11, 77 L.Ed.2d 65 (1983); *Opperman*, 96 S.Ct. at 3099–3100).

Because the officers in *Bertine* conducted the search pursuant to applicable standardized criteria, the Court was not faced with the problem now before us.

Most recently, in *Florida v. Wells*, 110 S.Ct. at 1635, the Court finally reached the question now before us. In *Wells*, the Court affirmed the Florida Supreme Court's decision to exclude evidence, found in a closed container during an inventory search, solely because the Florida Highway Patrol had no policy with respect to the opening of closed containers.[5] Just as in the present case, "there was no evidence that the inventory search was done in accordance with *any* standardized inventory procedure." *Id.* 110 S.Ct. at 1636. The Court based its reasoning on a view that "standardized criteria or established routine must *regulate* the opening of containers found during inventory searches...." *Id.* (emphasis added).

In the instant case, neither party disputes that the search conducted by the IRS agents *in fact* complied with Midland police

---

**5.** During oral argument, the State argued that the officer had performed the search according to "standard operating procedures" that were not yet adopted, but were later incorporated into the Highway Patrol Manual. *Wells*, 110 S.Ct. at 1636.

department procedures, and would have been constitutional if conducted by the Midland police pursuant to those procedures.[6] However, the IRS itself admittedly had no procedures for inventory searches, and there is no evidence that the IRS agents were aware of the Midland police procedures (or any other) when conducting the search, or that they conducted the search on behalf of, or even with the knowledge of, the Midland police (none of whom were present). Nor is there any evidence that the Midland police procedure governed or purported to govern inventory searches by federal officials in an instance such as this (or in any other instance).

The district court in this case issued its opinion before *Wells* was decided. Adopting a common-sense approach, the court declined to grant Hahn's motion to suppress evidence found in the closed briefcase, reasoning that the fact of the IRS agents' *de facto*, though unintentional, compliance with Midland police department standard inventory procedures, which mandated opening the briefcase, made the inventory search reasonable. In other words, had the Midland police conducted the exact same search of Hahn's vehicle, Hahn would have no constitutional objection. As noted by the district court, Hahn's only objection is that the IRS, "although [it] has forms and procedures for everything else in this world, it does not have a procedures guide for inventory of an automobile." But, under the circumstances here, it could also be said with at least equal logic that the existence of the Midland police policy was wholly irrelevant to the instant search, as that policy neither applied nor purported to apply to this search, and the IRS agents conducting the search did not know of the policy and were not (and did not consider that they were) acting on behalf of the Midland police, who knew nothing of the search.

Guided by the clear pronouncement in *Wells*, we·hold that the warrantless September 7 search, having been conducted in the absence of standardized procedures, may not be validated as an inventory search. Although the district court's approach has a certain logic, we conclude that *Wells* controls. In *Wells* the Supreme Court clearly expressed its view that inventory searches must be regulated in order to *limit police discretion* and reduce the danger that inventory searches will become a disguise for warrantless evidentiary searches. The requirement for standardized procedures is *not* imposed to *prevent* the opening of closed containers—as wholly acceptable procedures mandate such opening—but rather to minimize (or virtually eliminate) the discretion of the officers in determining whether or not to open them. Thus, it is an inadequate answer to the absence of such procedures to say that there was no invasion of a protected interest because the container might lawfully have been opened anyway, had such procedures been in place. This in turn necessarily implies that there must be some meaningful nexus between the procedures and the search. Such a nexus is necessarily lacking where, as here, not only are the procedures not applicable to the particular search, but also the officers conducting the search do so in total unawareness of such (or any other) procedures and as if no standardized procedures governed their conduct.

We accordingly conclude that the district court erred in holding that the September 7 search was valid as an inventory search.

■ The district court based its ruling denying Hahn's motion to suppress solely on the basis that the September 7 search, though undertaken without a warrant and not sought to be justified on probable cause or as incident to arrest, was valid as an inventory search. We have held that this ruling was erroneous. The government has urged that suppression is nevertheless not appropriate, as the exceptions

---

**6.** Section 5.04.07 of the Midland Police Department General Orders requires closed containers discovered during a vehicle inventory search to be opened, if possible, and inventoried. In *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1986), the Supreme Court held that opening closed containers found in a vehicle during an inventory search is constitutional if mandated by applicable standard police procedures.

to the exclusionary rule for "good faith"[7] and "inevitable discovery"[8] are applicable. However, these exceptions were not urged below[9] and the district court made no findings in regard to either of these exceptions (or any other) to the exclusionary rule.[10] Further, Hahn has not had a fair opportunity to factually respond to assertions of "good faith" or "inevitable discovery" (or other) exceptions to the exclusionary rule. Moreover, Hahn's plea of guilty—on which his conviction rests—was expressly conditioned on his right to appeal the district court's ruling on his motion to suppress, and that ruling denied the motion on the sole ground that challenged search was valid as an inventory search. In these circumstances, we conclude that, whatever discretion we might have in the premises, considerations of fairness and the orderly administration of justice tip the scales in favor of declining to now rule on whether (or to what extent) suppression can be avoided on the basis of some exception to the exclusionary rule or of some theory apart from inventory search on which the September 7 search might be sustained.[11] *See, e.g., Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503 (1958); *United States v. Robinson,*

650 F.2d 537, 539–40 (5th Cir.1981). *See also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2321, 2325, 76 L.Ed.2d 527 (1983); *United States v. Salazar,* 805 F.2d 1394, 1396, 1399–1400 (9th Cir.1986).

### Conclusion

Accordingly, we vacate Hahn's convictions and sentence and remand the cause to the district court to permit Hahn to replead.[12] We do not preclude retrial for any of the counts of which Hahn was convicted, and the government may also move to have reinstated the counts dismissed pursuant to the plea agreement. *See United States v. Briggs,* 920 F.2d 287, 293 (5th Cir.1991); *United States v. Kim,* 884 F.2d 189, 191–92 (5th Cir.1989); *Fransaw v. Lynaugh,* 810 F.2d 518, 526 (5th Cir.), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *Clark v. Blackburn,* 605 F.2d 163 (5th Cir.1979). Further, in the event there are to be further proceedings on any of the counts following remand and there is a renewed motion to suppress, the government may seek to avoid suppression (in whole or in part) by establishing the applicability of any appropriate exception to the

7.  *See, e.g., United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (en banc). *See also United States v. Frank,* 864 F.2d 992, 1003 (3d Cir.1988), *cert. denied,* 1095 U.S. 490, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989), where the Third Circuit stated, in an opinion rendered before *Wells* but some two months after the search at issue here, "[n]o Supreme Court case has ever held an inventory search invalid because of the absence of formalized pre-existing standards."

8.  *See, e.g., United States v. Webb,* 796 F.2d 60, 62 (5th Cir.), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987); *United States v. Evans,* 848 F.2d 1352, 1358 (5th Cir.1988), *modified,* 854 F.2d 56 (1988).

9.  Indeed, the government did not urge the good faith exception on appeal until, after oral argument, we requested supplemental briefing from each party on it.

10. The district court in its findings did describe the agents' actions as being in "good faith." However, it appears that this statement related to their lack of an *investigatory* motive for their search rather than an objectively reasonable belief that their conduct was unlawful. The state-

ment was made in the course of addressing the lawfulness of the search, and the district court found the search lawful as a valid inventory search. It never addressed, nor had occasion to address, what the consequences should be if the search was invalid.

11. The government has urged that it is a valid consent search. It is questionable whether this theory was adequately advanced below, and in any event the district court made no findings or rulings in that regard. We note that whether there was valid consent is usually regarded as primarily a fact question. *See United States v. Muniz–Melchor,* 894 F.2d 1430, 1439–41 (5th Cir. 1990). Thus, for the reasons stated in the text, we likewise decline to affirm on the basis of consent.

12. Hahn's appeal of his conviction, based on his conditional guilty plea, must be treated as a request to withdraw his plea. Apart from the conditional basis of the plea, Hahn's conviction and guilty plea do not depend on the legality of the search or the suppressibility of the evidence procured thereby. *See, e.g., Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 2374, 76 L.Ed.2d 595 (1983).

exclusionary rule or by establishing the legality of the warrantless search on some basis other than the inventory search rule. *See Giordenello*, 78 S.Ct. at 1251; *Salazar* at 1400.[13]

VACATED and REMANDED.

**13.** By the same token, Hahn is of course not limited in the grounds by which he may attack the search or seek to suppress evidence.