KAREN NELSON MOORE, Circuit
Judge, concurring in the judgment only.
I write separately because I would affirm the district court solely on the basis of the good-faith exception to a subsequently invalidated warrant. I agree with the majority’s conclusion that the search warrant explicitly authorized the search of the entire server. I disagree, however, that the Federal Bureau of Investigation (“FBI”) had probable cause to search the entire server. The majority’s analysis applies our case law on searches of personal computers to searches of shared space without a moment’s pause to consider the differences between the two. The rule announced by the majority would authorize the government to invade the privacy of any number of unidentified individuals or companies without any probable cause, just because they may, without their knowledge, share server space with suspected criminals.
I. WARRANT LACKED PROBABLE CAUSE TO SEARCH ENTIRE SERVER
A company like BlackSun provides web hosting services to other parties by allowing them to make use of its servers. A server is a computer that provides services to other computers; web servers, for example, send web pages to a computer when a user enters a specific URL[1] into his or her browser. R. 87-1 (BlackSun Aff. at ¶ 8(a)). Web servers at a place like BlackSun can be “shared,” meaning one server may host “multiple websites of unrelated companies,” id. at ¶ 8(h), or one company or individual can lease an entire server. In such instances, the leasing company may use the server solely for its own websites, or it may in turn sublease the space to other unaffiliated websites just as BlackSun does.
On any given server, there can be any number of user accounts with varying levels of access. Each server has an administrative account to access the whole server; each website has an individual operator account to access just the website’s directory. The government wants to analogize a server to a house with many open rooms. The appellant wants to analogize a server to an apartment with many locked units. *553 Depending on how the server is set up, either of these analogies may hold true.
Two hypothetical servers may be useful to illustrate this point.[2] Hypothetical Server A is owned by BlackSun, which then leases the space to 30 unaffiliated websites. Each website has its own user account on the server for its operator to log on remotely and make changes to his or her website directory. The operator of one website cannot put content in the directory of another website because his user account does not have access. The server has an administrator account that an employee at BlackSun uses to maintain the server. This administrator has access to every directory but is not affiliated with any of the websites. The administrator of this hypothetical server is like the landlord of the server, and each room or unit is separated from the other by a lock and key.
Hypothetical Server B is also owned by BlackSun, but instead BlackSun leases the entire space to Company B. Company B now maintains the administrator account itself and can set up as many websites on the server as it wants. It could use the server solely to host its own websites. It could set up six websites of its own and sublease the remaining space to a seventh, unaffiliated website. It could set up no websites of its own and sublease all the space to unaffiliated websites, just as BlackSun did with Server A. Company B as administrator maintains rights over the whole space and can access all the directories, whether the websites are operated by Company B or subleased and operated by unaffiliated companies. Server B is now more like a 30-bedroom house leased to one person, who may then choose to occupy all the rooms himself, fill them with his relatives, or sublet one or all of them to complete strangers and give them each locks on their rooms.
It should be obvious that, depending on whether a building is structured like Server A or Server B, the government may or may not have probable cause to search all the rooms when criminal activity is reasonably linked to one. The majority, however, would draw no distinction.
Neither party disputes that at the time of the seizure[3] and search, the investigating officers had probable cause to suspect that the site justinsfriends.net contained child pornography. The affidavit in support of the search warrant states that BlackSun confirmed that it was the current web hosting company for justinsfriends.net and justinsfriends.com (together, “JustinsFriends”).[4] R. 87-1 (BlackSun Aff. at ¶ 46). The only additional communication from BlackSun provided in the supporting affidavit is the following:
BlackSun is located at 1200 West 7th Street, Los Angeles, California 90017. BlackSun is an 18,000 square foot facility and has 2000 servers. The websites www.justinsfi-iends.com and www. justinsfriends.net websites [sic] resolving to IP address [xyz] resolve to one server that is a server owned and leased by BlackSun. The server is in cabinet *554 200.02, server number 4 and has a sticker on it that states collegeboyslive.
Id. at ¶ 47. The affidavit does not state to whom (or to how many parties) BlackSun leased computer server # 4 in cabinet # 200.02 (“Server # 4”). It does not state who the administrator of Server # 4 was. It does not state whether there were any other web sites hosted on Server #4, or whether those web sites were in any way related to JustinsFriends or had a common operator. In short, the affidavit does not state whether Server # 4 is more like Server A in the above hypothetical or Server B.
Based on the information that the FBI knew at the time the warrant was issued, probable cause existed to search any part of the server that someone affiliated with JustinsFriends could access. But the affidavit does not indicate that the FBI had any reason to suspect that someone affiliated with JustinsFriends was the administrator of the server as opposed to someone at BlackSun. The fact that some person had universal access to the server, without more, is insufficient grounds to justify a search of the entire server. Limiting the search to only a portion of the server under these circumstances is more consistent with our prior cases on electronic searches.
“A search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be ‘valid if it is as specific as the circumstances and the nature of the activity under investigation permit.’ ” Guest v. Leis, 255 F.3d 325, 336 (6th Cir.2001) (quoting United States v. Henson, 848 F.2d 1374, 1383 (6th Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989)). General warrants that merely authorize “wide-ranging rummaging searches” violate the Fourth Amendment. United States v. Logan, 250 F.3d 350, 364-65 (6th Cir.), cert. denied, 534 U.S. 895, 122 S.Ct. 216, 151 L.Ed.2d 154 (2001). Although cases addressing particularity are often concerned with supplying enough information to the ■ agents executing the warrant, of equal concern “is whether the category as specified is too broad in the sense that it includes items that should not be seized.” United States v. Upham, 168 F.3d 532, 535 (1st Cir.), cert. denied, 527 U.S. 1011, 119 S.Ct. 2353, 144 L.Ed.2d 249 (1999); see also United States v. Greene, 250 F.3d 471, 476-78 (6th Cir.2001). Given that the individual server was clearly identified by location and name, the issue in this case stems from the breadth of the warrant — whether the warrant should have covered the entire server.
I agree with the majority that, in the course of a reasonable search, investigating officers may have to examine cursorily innocuous documents “in order to determine whether they are, in fact, among those papers authorized to be seized.” Andresen v. Maryland, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). The same is true in an electronic search. When a warrant authorizes the search of a personal computer for child pornography, the agents are not required to open only the files or folders labeled “child pornography” even though this may result in brief access of private, innocuous material. United States v. Burgess, 576 F.3d 1078, 1093-94 (10th Cir.), cert. denied, -U.S. -, 130 S.Ct. 1028, 175 L.Ed.2d 629 (2009). This flexibility recognizes that the owner of the computer has access to the full hard drive and may hide criminal activity under non-criminal names. That, however, is not the situation here.
As discussed above, a server like the one at BlackSun is inherently different from a personal computer in that it may belong entirely to one person, and thus be like a *555 house with many accessible rooms, or it may host material provided by any number of potentially unaffiliated users who cannot access each others’ content, resembling more an apartment complex with locked doors. The government wants to consider a server always like a home and therefore always to have probable cause to search the whole thing. The defense wants to consider a server always like an apartment building and to require a separate search warrant for every locked door. The reality is that servers can be structured to function like either, and our rules regarding searching shared server space should be flexible to accommodate both situations.
Almost all of the cases offered by the majority to justify the search of the entire server involve searches of computers or hard drives within the complete control of the individual suspected of criminal activity.[5] Only two cases address somewhat comparable situations to the facts at hand, where the government sought to search space shared by many users, and both of these cases counsel against a blanket rule permitting searches of entire servers in all situations.
In Quest, state police had probable cause to believe that obscene material was being posted to two different electronic bulletin boards.[6] 255 F.3d at 336-37. *556 Each bulletin board was run by a single person from his home. The police were able to identify the addresses of those individuals and in both cases seized the computer servers being used to operate the boards. The Guest case has no bearing on the facts of this case because in both instances in Guest the owners of the servers themselves were suspected of involvement in the criminal activity. The search was therefore appropriate with respect to suspicions relating to the owners of the servers. Additionally, the plaintiffs “[did] not dispute in their briefs that defendants had probable cause to search for evidence of crimes on the computers.” Id. The government’s reliance on Guest to justify wholesale seizure of any server is therefore misplaced. Appellee Br. at 32.
A more relevant comparison could be made to United States v. Adjani, 452 F.3d 1140, 1146 (9th Cir.), cert. denied, 549 U.S. 1025, 127 S.Ct. 568, 166 L.Ed.2d 420 (2006). In Adjani, the court upheld the search of someone else’s computer in executing a search warrant at a suspect’s residence. Upon first determining that probable cause existed to search computers found at the suspect’s residence, the court next addressed whether the probable cause extended to a computer on the premises known to belong to the suspect’s roommate. The court found that it did. “The agents, acting pursuant to a valid warrant to look for evidence of a computer-based crime, searched computers found in Adjani’s residence and to which he had apparent access. That one of the computers actually belonged to [the roommate] did not exempt it from being searched, especially given her association with Adjani and participation (however potentially innocuous) in some of his activities as documented in the agent’s supporting affidavit.” Id. (emphasis added).[7]
All of these cases emphasize that the person suspected of criminal activity, whether identifiable or anonymous, had the ability to hide the illegal files anywhere on the computers or hard drives that were ultimately searched. United States v. Mann, 592 F.3d 779, 784 (7th Cir.) (broad search reasonable because defendant “could have images of women in locker rooms virtually anywhere on his computers”), cert. denied, — U.S. -, 130 S.Ct. 3525, 177 L.Ed.2d 1106 (2010); United States v. Stabile, 633 F.3d 219, 234 (3d Cir.2011) (“[A] broad seizure was required because evidence of financial crimes could have been found in any location on any of the six hard drives, and this evidence very likely would have been disguised or concealed somewhere on the hard drive.”), cert. denied, — U.S.-, 132 S.Ct. 399,-L.Ed.2d-, No. 10-10825, 2011 WL 2182609 (Oct. 11, 2011); Adjani, 452 F.3d at 1146 (permitting search of all computers that suspect could access, even if not his); United States v. Sherman, 372 Fed.Appx. 668, 675-76 (8th Cir.2010) (unpublished opinion) (“[Defendant] fails to acknowledge he had access to all components of the computer system used in his business and that the computer data could be manipulated, stored in different formats, or stored outside of the [specific program suspected of misuse].”).
Here, neither the warrant nor the supporting affidavit indicates a reason to believe that the owner of JustinsFriends had access to the entire server. The majority views the lack of knowledge regarding who *557 was the administrator and whether the server was leased to one person or shared as counseling in favor of allowing unfettered access to the whole server.[8] I cannot agree. Absent probable cause to search the whole server, the agents must limit their search to the areas they have reason to believe someone at JustinsFriends could have placed child pornography. Based on the statements in the warrant and the supporting affidavit, that would be limited to the JustinsFriends directory and any unallocated space on the server.[9]
That is not to say that a warrant to search the entire server may never be “as specific as the circumstances and the nature of the activity under investigation permit.” United States v. Ables, 167 F.3d 1021, 1033 (6th Cir.) (quoting Henson, 848 F.2d at 1383), cert. denied, 527 U.S. 1027, 119 S.Ct. 2378, 144 L.Ed.2d 781 (1999). Indeed, probable cause might have been established in this case had the FBI agent requesting the warrant included additional facts in the warrant or supporting affidavit known at the time. We know from the evidence presented at the suppression hearing and later at trial that BlackSun provided FBI agents at least some information regarding the structure of Server #4 at the time the warrant was issued. BlackSun indicated that they leased the entire server to one individual, last name unknown. James Fottrell testified that when a server is leased in its entirety to one person or entity, it is more likely that the websites on that server are related. Had this information been included in the supporting affidavit, there may have been sufficient probable cause to search the entire server even without knowing anything else about the internal structure of the server.
FBI agents may not always be able to obtain such details about the internal structure of a server prior to imaging it. But the majority’s position excuses the investigating agents from asking such simple questions as ‘Who leases this server?” and “What other websites are on this server?” When such answers are not forthcoming, the FBI could issue an administrative subpoena in order to gain more information about the structure of the server in question. Alternatively, the warrant itself could be structured to require computer personnel to make an initial determination based solely by looking at the user accounts as to what areas someone affiliated with the suspect site had access. Upon making such a determination, only those directories would be imaged for searching, or if already imaged due to on-site difficulties, any non-affiliated directories would be returned.[10]
*558 The Ninth Circuit has already counseled a similar approach in instances where the suspect data is intermingled on the same server with other, non-target data. In United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162 (9th Cir.2010) (en banc), a warrant was issued to obtain drug test results for ten specific baseball players from a third-party drug testing facility. The warrant specifically required that “ ‘computer personnel’ conduct the initial review of the seized data and segregate materials not the object of the warrant for return to their owner.” Id. at 1171. Instead, the government imaged an entire directory and the case agent subsequently “rooted out information pertaining to all professional baseball players and used it to generate additional warrants and subpoenas to advance the investigation.” Id. The court upheld several lower court determinations that the property was unlawfully seized and must be returned, rejecting the government’s theory that the information was in “plain view.” Because one cannot know the contents of a computer file without opening it, the court acknowledged, “everything the government chooses to seize ... automatically come[s] into plain view. Since the government agents ultimately decide how much to actually take, this will create a powerful incentive for them to seize more rather than less.” Id. The court ended with a cautionary note:
The advent of fast, cheap networking has made it possible to store information at remote third-party locations, where it is intermingled with that of other users.... As a result, people now have personal data that are stored with that of innumerable strangers. Seizure of, for example, Google’s email servers to look for a few incriminating messages could jeopardize the privacy of millions.
Id. at 1176. The rule advanced by the majority in this case could also jeopardize the privacy of innumerable strangers to the crime. Here, the FBI agents made no showing that they had probable cause to believe that every directory on Server # 4 was accessible to the operators of JustinsFriends. They also made no effort to determine first what directories on Server #4 were accessible to the operators of JustinsFriends, or whether the operators were also administrators. Requiring such a preliminary showing when possible, or at a minimum requiring an initial inquiry before searching, allows legitimate interests of law enforcement to be advanced while still maintaining safeguards against the privacy of people who signed up for web hosting services and were never told that their site shared space with a child pornographer on the other side of the country.
When the government has probable cause to search for drugs in a specific apartment, we have never held that the existence of a landlord with keys to every other apartment in the building creates probable cause to search every apartment. But if the landlord happens to live in the very apartment suspected of containing drugs, his universal access may become relevant. Here, however, the warrant provided no probable cause to believe that someone connected to JustinsFriends had access to the entire server. I would therefore hold the search warrant unconstitutional because it was overly broad.
II. GOOD-FAITH EXCEPTION APPLIES
The only remaining question is whether the agents are entitled to rely on an invalid warrant under the good-faith exception in United States v. Leon, 468 U.S. 897, 914-15, 104 S.Ct. 3405, 82 L.Ed.2d 677 *559 (1984).[11] I agree that they are, but for different reasons than the majority. The only potential Leon situation applicable here is whether the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable....” United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir.1994) (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405).[12]
Whether an affidavit lacks indicia of probable cause “is a less demanding showing than the ‘substantial basis’ threshold required to prove the existence of probable cause in the first place.” United States v. Carpenter, 360 F.3d 591, 595 (6th Cir.) (en banc) (internal quotation marks omitted), cert. denied, 543 U.S. 851, 125 S.Ct. 261, 160 L.Ed.2d 84 (2004). The inquiry is whether an agent reading the warrant in a “practical, common sense manner” would be able to detect the deficiency. United States v. Van Shutters, 163 F.3d 331, 337 (6th Cir.1998) (internal quotation marks omitted), cert. denied, 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). In Van Shutters, we upheld reliance on an affidavit describing both the criminal activity and a location with such particularity that a reasonable executing agent would make the “common sense inference” that the affiant had verified a nexus between the two. Id.
In this case, I disagree with the majority that the affidavit explains why it was necessary to image the entire server. Majority Op. at 542-43. The only area of the server’ for which the affidavit explains why a search is necessary relates to the unallocated space:
I have been informed by James Fottrell, that the entirety of the unallocated space of the servers on which materials relating to IP address [xyz] are found should be searched because the unallocated space of those servers is likely to contain relevant evidence of materials that have been deleted or otherwise moved from the servers.
R. 87-1 (BlackSun Aff. at ¶ 55). An explanation like the one above is never offered as to why probable cause exists to image the whole server; only the details of how the server is going to be imaged are given. The remaining parts of the affidavit, however, suggest a sufficient nexus between the illegal activity and the server as a whole to support a good-faith belief in the warrant’s validity even though probable cause was ultimately lacking, particularly given the level of detail in the affidavit and the technical nature of the search.
*560 The affidavit describes at length the probable cause for suspecting that the JustinsFriends sites are engaging in the production and distribution of child pornography. The affidavit then briefly explains how the FBI agents were able to determine that the JustinsFriends sites were located on a single server at BlackSun. The affidavit indicates a FBI Special Agent spoke to BlackSun representatives and was told the content was hosted on Server # 4, and that Server # 4 was “owned and leased” by BlackSun. Id. at ¶ 47. The affidavit then describes Black-Sun’s website as advertising “colocation” services.[13] The affidavit concludes by stating that “[m]embers of the justinsfriend website(s) are able to access servers through the use of a computer and computer modem or other connection device.” Id. at ¶ 48. Although the use of the word “leased” may indicate to a technically savvy agent that this server in question was not necessarily owned entirely by JustinsFriends, the emphasis immediately following is on the colocation services offered at the BlackSun facility. That, coupled with the authorization to search the entire server, permit a common-sense inference of a sufficient connection between JustinsFriends and the entire server.
I would therefore hold that the good-faith exception in Leon justifies affirming the district court’s decision to deny the motion to suppress, despite the invalidity of the underlying warrant. I therefore concur in the judgment.

. "URL” stands for uniform resource locator. A URL identifies a specific page within a website, such as http://www.justinsfriends.neV members. See Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc., 326 F.3d 687, 691 (6th Cir.2003).

. At the suppression hearing, the government's expert, James Fottrell, was asked about the many different ways a server could be set up. The basis for these hypothetical servers comes from his testimony.

. The search warrant authorized only on-site imaging of the servers, not taking the hardware off-site. However, one hard drive was removed and “imaged off-site due to technical issues.” Appellee Br. at 25 n.10. Richards has not challenged whether the removal was an unlawful seizure; therefore, we need not address that issue.

.Users visiting justinsfriends.com were redirected to justinsfriends.net.

. In most of the cases, the search warrant was issued because a specific individual was suspected of criminal activity. See United States v. Clark, 257 Fed.Appx. 991, 992 (6th Cir.2007) (unpublished opinion) (upholding broad search of computer or related storage media found in suspect’s home), cert. denied, 555 U.S. 829, 129 S.Ct. 37, 172 L.Ed.2d 48 (2008); United States v. Stabile, 633 F.3d 219, 234 (3d Cir.) (same), cert. denied, - U.S. -, 132 S.Ct. 399,-L.Ed.2d-, No. 10-10825, 2011 WL 2182609 (Oct. 11, 2011); United States v. Mann, 592 F.3d 779, 784 (7th Cir.) (same), cert. denied, — U.S. -, 130 S.Ct. 3525, 177 L.Ed.2d 1106 (2010); Burgess, 576 F.3d at 1093-94 (same); United States v. Banks, 556 F.3d 967, 973 (9th Cir. 2009) (same); United States v. Hill, 459 F.3d 966, 976-77 (9th Cir.2006) (same), cert. denied, 549 U.S. 1299, 127 S.Ct. 1863, 167 L.Ed.2d 353 (2007); United States v. Grimmett, 439 F.3d 1263, 1268-69 (10th Cir.2006) (same); United States v. Brooks, 427 F.3d 1246, 1252-53 (10th Cir.2005) (same), cert. denied, 546 U.S. 1222, 126 S.Ct. 1449, 164 L.Ed.2d 147 (2006); United States v. Simpson, 152 F.3d 1241, 1248 (10th Cir.1998) (same); United States v. Lacy, 119 F.3d 742, 746-47 (9th Cir. 1997) (same), cert. denied, 523 U.S. 1101, 118 S.Ct. 1571, 140 L.Ed.2d 804 (1998). Cf. United States v. Sherman, 372 Fed.Appx. 668, 675-76 (8th Cir.2010) (unpublished opinion) (upholding search of computers found in business suspected of criminal activity); United States v. Khanani, 502 F.3d 1281, 1290 (11th Cir.2007) (upholding search of multiple computer hard drives seized from multiple locations of a business suspected of criminal activity). In some instances, the agents suspected that a location had a computer device engaging in criminal activity and the search warrant was issued to cover all computer devices at the premises. See United States v. Meeks, 290 Fed.Appx. 896, 901-02 (6th Cir.2008) (unpublished opinion) (upholding search of computer disks in home where internet service had been used to download child pornography); United States v. Cartier, 543 F.3d 442, 447-48 (8th Cir.2008) (upholding search of computer and hard drives found in home that was linked to an ISP address known to be downloading child pornography), cert. denied, - U.S. -, 129 S.Ct. 1390, 173 L.Ed.2d 641 (2009); Upham, 168 F.3d at 535 (upholding search of computer found in home that was linked to an ISP address known to be downloading child pornography). Although this more closely resembles the instant facts, the key is that the agents in Meeks, Cartier, and Upham were still searching only computer devices that were accessible by the unidentified individual. If the address associated with the ISP had been an apartment building and no more, it seems indisputable that a warrant would not permit searching every computer in every individual apartment.

. One of the bulletin boards was a large online community where users, who accessed the site via an individual account and password, could e-mail each other, participate in chat rooms, play games, and post and read messages on a variety of topics. Guest, 255 *556 F.3d at 330. The second bulletin board was smaller site where users could log in only one at a time to post and read content. Id. at 331.

. The court specifically disclaimed reliance on an argument that the two roommates maintained "joint computers.” Adjani, 452 F.3d at 1145 n. 3.

. The government makes no effort to hide this point: "[B]efore the search, the government did not know whether the server was shared or dedicated, and, if shared, whether any websites were related, how the directory was organized, and whether any users had access to the entire server.” Appellee Br. at 35-36.

. Richards does not contest the search of the unallocated space. When a website operator deletes content, the remains of the deleted file sit in the unallocated space on the server. Thus when the agents have probable cause to search a specific site, they should be able to search the unallocated space as well.

.This cannot be an overly burdensome requirement considering that the government presented evidence at trial indicating how it was able to determine that user accounts affiliated with JustinsFriends did indeed have administrative rights over the whole server. At the suppression hearing, however, the government’s expert had not bothered to look at access rights yet, making a point of saying that his first priority was to find the child pornography anywhere on the server.

. The government’s failure to raise this argument before the district court would normally counsel against addressing this issue. United States v. Williams, 615 F.3d 657, 668 (6th Cir.2010); see also United States v. Hahn, 922 F.2d 243, 247-48 (5th Cir. 1991) (declining to consider good-faith exception raised for the first time on appeal). However, the relevant Leon exception here requires evaluating only the four corners of the affidavit and an objective reasonableness standard. See United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) ("In determining whether an affidavit is 'bare bones,’ the reviewing court is concerned exclusively with the statements contained within the affidavit itself.”). No further record development is necessary because unlike in Hahn, Richards’s arguments are based solely on the deficiencies of the affidavit and not on the underlying facts. See Appellant Reply Br. at 25-26. We therefore may exercise our discretion to consider this issue. Williams, 615 F.3d at 668.

. The other three exceptions are inapplicable because the evidence does not suggest that the supporting affidavit was made in bad faith, that the magistrate judge abandoned his duties, or that the warrant was so facially deficient that it could not reasonably be presumed valid. See United States v. Higgins, 557 F.3d 381, 390-91 (6th Cir.), cert. denied, - U.S. -, 130 S.Ct. 817, 175 L.Ed.2d 573 (2009).

. Colocation is a service whereby the web hosting company provides space at its facility for a customer to house its own server. R. 87-1 (BlackSun Aff. at ¶ 8(h)). For example, the second search warrant executed in this case was for a server housed at another ISP. When the officers called to preserve the content of the server in question, they were told that that ISP was “unable to preserve the content on the servers because the servers are password protected and are owned directly by [abe]." R. 87-2 (Aff. at ¶ 48).