# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2013

No. 12-60105

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GREGORY EDWARD VERNON,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
U.S. Dist. Ct. No. 2:06-cr-00160

Before DEMOSS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Gregory Vernon ("Vernon") appeals his conviction following a jury trial on one count of knowingly transporting child pornography in interstate commerce in violation of 18 U.S.C. §§ 2252A(a)(1), 2256(8)(A),(B). His appellate arguments fall into two categories: (1) deprivation of right to a speedy trial; and (2) prosecution on evidence that should have been suppressed. We AFFIRM the district court's ruling on the motion to dismiss but REVERSE the ruling on the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60105

motion to suppress and therefore VACATE the judgment and REMAND for further proceedings.

## I. Facts and Proceedings

Vernon was indicted in Arizona on child molestation and child pornography possession charges. Arizona officials, learning that Vernon was at a casino in Tunica, Mississippi, requested assistance from the United States Marshals Service ("USMS") in apprehending and arresting Vernon. Following Vernon's arrest at the Mississippi casino on August 9, 2006, the marshals learned that his car was in the parking lot. Vernon refused consent to search the vehicle. Upon inquiry, the marshals learned that the casino officials wanted the car removed. Marshal Christopher Kruse ("Kruse") asked the Tunica sheriff's office to have the car towed, and it was taken to the Tunica County Sheriff's Office impound lot. Kruse testified at the motion to suppress hearing that he was asked by his supervisor to "assist [the Tunica sheriff's office] doing an inventory." He indicated that the inventory was actually conducted by someone from the sheriff's office using "a form or notes and . . . [Kruse] was just assisting him." Kruse admitted that the search conducted did not comply with USMS policy.

During the search, cash and a laptop computer were located. After talking to the Arizona officials who requested the original arrest, Kruse executed an affidavit in support of a search warrant request that was granted. When searched, the laptop revealed numerous child pornography images.

Vernon was returned to Arizona to face his original charges there. A federal grand jury in Mississippi indicted Vernon on child pornography charges on October 26, 2006. On November 8, 2006, a detainer was filed with the Arizona authorities regarding the federal indictment out of Mississippi. There is no evidence that Vernon was ever advised of this detainer. In April of 2011, Vernon was finally sentenced on the Arizona charges, and Vernon was then

No. 12-60105

transferred back to Mississippi to face the federal charges. He was formally arrested on those charges on June 24, 2011.

Vernon moved to dismiss the indictment based upon a failure to provide him with a speedy trial. He also moved to suppress the evidence obtained from the laptop computer. Following an evidentiary hearing, the district court denied both motions, and a jury trial was conducted. The jury found him guilty, and he was sentenced to 400 months. This timely appeal followed.

## II. Discussion

### A. Speedy Trial

The Sixth Amendment guarantees each accused with "the right to a speedy . . . trial." U.S. Const. amend. VI.[1] The constitutional question of delay in prosecution is governed by *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Under *Barker*, the court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *Id.* When a defendant's constitutional right to a speedy trial has been violated, dismissal of the indictment is the only available option, even when it allows a defendant who may be guilty of a serious crime to go free. *Id.* at 522. We review a district court's weighing of the factors *de novo*, but the underlying factual findings are reviewed for clear error. *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009).

The district court found, and the evidence supports, that a USMS employee filed a detainer against Vernon in a timely fashion (on November 8,

---

[1] We agree with the district court that the statutory Speedy Trial Act, 18 U.S.C. § 3161(j) and the Interstate Agreement on Detainers Act ("IADA"), 18 U.S.C. App. 2, § 2, would not provide a basis for dismissal here. *See Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998) (dismissal of the indictment is not an available remedy for violation of the IADA notice provisions); *United States v. Anderton*, 752 F.2d 1005, 1008 (5th Cir. 1985) (no sanction available under the Speedy Trial Act for failure to lodge a detainer). We adopt the district court's reasoning on these points and address only the constitutional argument further.

2006). Thereafter, the employee checked on the detainer two times and filed a new detainer when Vernon was transferred to the Arizona Department of Corrections in May of 2011. He was then promptly returned to Mississippi where he was scheduled for trial on August 15, 2011.[2] The constitutional issue is raised where the post-indictment delay was more than one year. *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002). Here, the length-of-delay factor weighs in Vernon's favor as it was nearly five years.

As to the reason for the delay, we have held that where the delay results from the defendant being in the custody of another sovereign, "the proper focus is . . . whether, and to what extent, the state took steps to bring [the defendant] back . . . for trial." *Nelson v. Hargett*, 989 F.2d 847, 853 (5th Cir. 1993) (habeas case). Here, the USMS acted properly in promptly lodging a detainer, and Vernon was in Arizona custody awaiting trial there. The district court did not find intentional delay on the Government's part, and we see none. Thus, as far as the "reason for the delay," we do not fault the Government for any failure on Arizona's part to inform Vernon of the charges. Vernon contends he could not have asserted his speedy trial right because he was unaware of the charges; regardless, this factor does not weigh in his favor.

Finally, we turn to the question of prejudice. We agree with the district court that Vernon is not entitled to a presumption of prejudice. *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (noting that prejudice is only presumed where the post-indictment delay lasted at least five years). Instead, Vernon had the burden of proving prejudice. *Id.* at 230-31. On appeal, Vernon fails to point to any evidence evincing clear error on the district court's part in finding no prejudice. Accordingly, we conclude that weighing the four

---

[2] The scheduled trial was continued at Vernon's attorney's request.

factors in light of the district court's findings, Vernon was not entitled to a dismissal of the indictment.

B. Motion to Suppress

"When reviewing the denial of a motion to suppress, we review factual findings for clear error and the trial court's conclusions as to the constitutionality of law enforcement action . . . de novo." *United States v. Cherna*, 184 F.3d 403, 406 (5th Cir. 1999). We will not find clear error unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002) (internal citations and quotation marks omitted). We view the evidence in the light most favorable to the Government as it was the prevailing party. *See United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993).

Vernon appeals the denial of his motion to suppress in which he made three primary arguments: (1) the impoundment of his car violated the Fourth Amendment; (2) the inventory search of his car violated the Fourth Amendment; and (3) the search warrant for his laptop computer was not supported by probable cause. Under the Fourth Amendment, "[w]arrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001). Two of these exceptions include the "community caretaking exception," *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012), and the inventory exception, *United States v. Hahn*, 922 F.2d 243, 246 (5th Cir. 1991). We address each possible exception under these facts in turn.

1. Impoundment

We need spend little time on Vernon's argument that the original impoundment of his vehicle was an unconstitutional seizure. We have held on numerous occasions that impoundment of an arrestee's vehicle under similar

circumstances is permissible under the "community caretaking" exception. *See, e.g.*, *McKinnon*, 681 F.3d at 208-09 (5th Cir. 2012); *United States v. Staller*, 616 F.2d 1284, 1289-90 (5th Cir. 1980); *United States v. Ducker*, 491 F.2d 1190, 1192 (5th Cir. 1974). For example, in *Staller*, we concluded that impoundment of a car in a mall parking lot was proper where the arrestee was from another state and had been taken to jail with little likelihood of returning to his car soon, he had no known responsible adults who could take custody of the car, and a car parked in a mall parking lot (similar to a casino lot) runs a high risk of vandalism or theft. 616 F.2d at 1290. These same facts support the impoundment here. We conclude that the district court did not err in finding the original impoundment not to be an unconstitutional seizure.

2. Inventory Search

The purported inventory search presents a more difficult question. When a vehicle is impounded, an inventory of its contents may be conducted; however, such an inventory process must be guided by "applicable standardized criteria." *Hahn*, 922 F.2d at 246. Such standardized criteria are necessary "based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

At the suppression hearing, Kruse gave testimony supportive of a concept that the search was conducted by local officials with his participation being limited to "assistance." However, the Government focused on the USMS policy, and Kruse conceded that he did not comply with this policy. The district court nonetheless found the search supported by the "independent reason" that "[t]he marshals knew that Vernon would be transported to Arizona after he was arrested and that his vehicle could not be left at the casino." We agree with Vernon that the district court erred in this regard; it appears that the court

conflated the requirements for the initial impoundment with the requirements for a subsequent inventory search.

On appeal, the Government does not contend that the inventory search complied with the USMS policy, thus waiving any such argument. Instead, it argues that the search was conducted by Tunica County sheriff officials pursuant to their policy. Vernon counters that this policy was not offered at the suppression hearing and cannot form the basis for our consideration here.

Vernon asserts that we "may not consider facts which were not before the district court at the time of the challenged ruling." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999). We need not decide whether inadequate evidence presented at a suppression hearing can be remedied at a later trial because here no evidence of any kind concerning Tunica County policy was presented at any point before the district court entered judgment. Accordingly, we may only consider the fact that the USMS had a policy with which Kruse admittedly did not comply.[3] In *United States v. Hope*, 102 F.3d 114, 115 (5th Cir. 1996), we addressed a similar situation where mention was made of an inventory by "Memphis police" but no evidence was proffered regarding any standardized criteria for such searches or compliance therewith. We reversed the convictions after a jury trial that relied upon the evidence found in the inventory search reasoning: "It is beyond serious debate that the prosecution bears the burden of establishing that any evidence submitted, which resulted from an inventory search, was the result of a search conducted in accordance with known,

---

[3]   In *United States v. Lage,* we considered circumstances where a trooper with the Texas Department of Public Safety ("DPS") conducted a search with the assistance of a county deputy sheriff. 183 F.3d 374 (5th Cir. 1999). Evidence indicated that the search was conducted pursuant to the DPS's inventory policy but that the county sheriff's department did not have a set of rules for inventory searches. *Id.* at 380-81. We found that the search did not violate the Fourth Amendment as it was conducted in accordance with the DPS's policy. *Id.* at 381. Here, unlike in *Lage*, the only policy offered in evidence was USMS's, the "assisting" officer's department. Regardless, even that policy was not complied with.

established police procedures. That did not occur herein and the evidence found in the search . . . should not have been admitted in evidence." *Id.* at 117.[4] We are compelled to reach the same conclusion here.

We similarly reversed a district court in *Hahn*, where we concluded that the search there at issue actually complied with a local police policy but the IRS agents who conducted the search had no knowledge of such a policy, the IRS had no policy of its own, and the local police played no role in the search. *Id.* at 246-47. We therefore concluded that the IRS search could not be justified as an inventory search. *Id.* at 247.

Under our precedents and with the Government's admissions to the district court, the motion to suppress should have been granted. Accordingly, we AFFIRM the denial of the motion to dismiss, REVERSE the denial of the motion to suppress the inventory search,[5] VACATE the conviction and sentence, and REMAND for proceedings consistent herewith.

---

[4] Since the laptop was the primary evidence against Vernon, it cannot reasonably be claimed that this error was "harmless."

[5] Vernon also challenged the validity of the search warrant. Because the search warrant was based upon the improper vehicle search, it does not provide an independent basis to sustain the admission of the laptop evidence.